L. T. ALVERSON, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76130. Promulgated February 12, 1937.

*Lyle T. Alverson, Esq.*, pro se.
*George Brabson, Esq.*, for the respondent.

### OPINION.

ARNOLD: This proceeding involves a deficiency in income tax for the year 1931 in the sum of $3,472.54. The questions for our determination are the correctness of the Commissioner's action in (a) using, as to securities bought prior to 1931 and sold in 1931, cost adjusted to conform to market values as of December 31, 1930, as a basis for determining gain or loss, instead of the original cost of the securities, and (b) in refusing to allow as a deduction from gross income $600 paid by petitioner for a statistical market service claimed by petitioner as an ordinary and necessary business expense.

The case was submitted on oral and documentary evidence.

Petitioner, an individual, a resident of New York City, during the year before us and for many years prior thereto was engaged in the practice of law. During those years he also bought and sold substantial quantities of stocks and bonds on the New York Stock Exchange. For many years prior to 1931 he kept an inventory of his securities, reflecting on his books profit and loss based on market fluctuations at the beginning and end of each year. Prior to 1927 he made his returns on the basis of actual transactions.

Beginning with the year 1927, through and including 1931, he made his returns on the basis of book or inventory values. Securities when purchased were entered at cost, and at the beginning and end of each year adjustments were made as to each security to conform to market values. For the year 1932 he again changed and began making his returns on the basis of actual transactions. In his return for 1931 he took an inventory loss of $52,892.86. This sum represented the difference between the opening and closing inven-

tories for that year. As to securities purchased and sold in 1931, he used the cost price as a basis. The adjustments in his book values to conform to market values were made separately as to each security and not *en gros*, except as they were totaled.

The petitioner during the year 1931 sold securities as set out below. The cost of such securities sold and the market value as reflected in the closing inventory of December 31, 1930, were as follows:

| Securities | Date purchased | Cost | Inventory value Dec. 31, 1930 |
|---|---|---|---|
| 2 sh. Guaranty Trust | 8/22/29 | $1,970.00 | $3,066.00 |
| 5 sh. Do | 11/7/30 | 3,253.75 | |
| 10 sh. National City Bank | 11/6/30 | 3,504.50 | 900.00 |
| 10 sh. Mathieson | 11/7/30 | 355.25 | 1,550.00 |
| 40 sh. Do | 3/25/30 | 1,961.00 | |
| 1 M Hudson & Manhattan | 4/23/30 | 802.50 | 750.00 |
| 5 M Swift & Co | 8/23/30 | 5,000.00 | 5,000.00 |
| 10 M Van Sweringen | 9/15/30 | 9,700.00 | 8,000.00 |
| 25 sh. Woolworth | 11/11/30 | 1,388.76 | 1,388.76 |
| 25 sh. Amer. Tobacco | 11/11/30 | 2,587.50 | 2,650.00 |
| 1 M Florida P & L | 9/19/30 | 906.25 | 840.00 |
| 100 sh. So. Pacific | 4/17/30 | 9,020.00 | 9,020.00 |
| 1,794 sh. Nat. Cellulose | 2/15/28 | 4,200.00 | 500.00 |
| 2 Consumers Bldg. bond | 1931 | 200.00 | 200.00 |
| .1 Cent. Med. Bldg. bond | 1931 | 100.00 | 100.00 |
| 10.3 M Third Ave. Bldg. bond | 1931 | 3,993.00 | 3,993.00 |
| 6.15 M Blind Brook | 1931 | 1,380.67 | 1,380.67 |
| Total | | 50,323.18 | 39,338.43 |

The total cost of all securities sold in 1931 was $50,323.18. The December 31, 1930, adjusted to market values of the securities on hand at the beginning of the tax year which were sold in 1931, together with the cost of securities bought and sold in 1931, amounted to $39,338.43. The Commissioner, in computing the deficiency for 1931, used this latter amount as the basis, while petitioner insists the original cost should be taken as the basis for determining his gain or loss on the stock sold in 1931. This results in a difference of $10,984.75, which gives rise to the controversy here.

Petitioner claims he began making his returns in 1927 by the inventory method, at the suggestion of a revenue agent who had inspected his books, and that if he is not permitted to use that method in computing his 1931 taxes in making the change to actual transactions, he should be permitted to use the original cost as a basis. In other words, he claims that in making the change from the method used from 1927 to 1930 to the actual transaction method it should be consistently applied and he should not be required to use the book or inventory values adjusted to market values at the beginning of the year 1931 as to securities owned at the beginning of that year and sold during the year.

Section 22 (c) of the Revenue Act of 1928 provides:

(c) *Inventories.*—Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any tax-

payer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

Article 105 of Regulations 74, promulgated pursuant to the above section of the statute, provides that a dealer in securities who in his books of account regularly inventories unsold securities on hand either at (a) cost, (b) cost or market, whichever is lower; or (c) at market value, "may make his return upon the basis upon which his accounts are kept; provided that a description of the method employed shall be included in or attached to the return, that all the securities must be inventoried by the same method, and that such method must be adhered to in subsequent years, unless another be authorized by the Commissioner." The regulations define who will be considered a dealer in securities for the purpose of this rule and who will not. Petitioner had long kept his books on the inventory method, and in 1927, at the suggestion of a revenue agent and after determining that it would be to his advantage, he reported income on that basis, and continued to do so with the approval of the Commissioner up to the taxable year 1931. Acting under his statutory authority [1] and in accordance with his regulations, the Commissioner changed the method of reporting, effective in 1931, and recomputed petitioner's income for that year, such recomputation resulting in the deficiency here in question. There is no contention by petitioner that the method of accounting employed by him clearly reflected his income or that he is entitled to compute his income on that basis. His contention goes no further than to challenge the method of computation employed by the Commissioner in so far as it affects the basis of the securities on hand at the beginning of the taxable year. He argues that the Commissioner to be consistent must take as a basis for computing gain or loss the original cost of the securities sold which were on hand at the close of 1930. There is no showing that the method used by the Commissioner is unequitable or that it does not clearly reflect income.

We think evidence as to the original cost of the securities in question is not controlling when we consider the whole record. For four years prior to 1931 petitioner, with the approval of the Com-

---

[1] SEC. 41. GENERAL RULE.

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year.

missioner, computed income from securities by adjusting the cost to market as shown by his inventories at the beginning and end of the year. The cost, therefore, as shown by his books at December 31, 1930, represented the actual adjusted cost of the securities on hand. The difference between the original cost and such adjusted cost had been accounted for in the tax returns for 1930 and prior years, and in our judgment the adjusted cost was the proper basis from which to compute gain or loss for tax purposes in 1931. Any other basis would have resulted in a distortion of taxable income.

It is the theory of the law to allow a taxpayer, upon the sale of property, to recover the cost of such property before any taxable gain is realized. *Firemen's Insurance Co.*, 30 B. T. A. 1004; *Graves, Cox & Co.*, 27 B. T. A. 546; *Elliott-Granite Linen Corporation*, 26 B. T. A. 936; *Alpin J. Cameron*, 8 B. T. A. 120; *Gould Paper Co.*, 26 B. T. A. 560; *United States* v. *Ludey*, 274 U. S. 295. Cf. *United States* v. *Tindle*, 276 U. S. 582. It sometimes occurs that a mistake is made in returning income which can not be corrected in a subsequent year without resulting in a distortion of income. Cf. *Gould Paper Co., supra; Chatham & Phenix National Bank*, 1 B. T. A. 460; *Northern National Bank*, 16 B. T. A. 608; *Bank of Hartsville*, 1 B. T. A. 920; *MacMillan Co.*, 4 B. T. A. 251, or that a taxpayer elects to change his method of accounting and is required to compute his income according to the method of accounting employed, *W. R. Ramsey*, 26 B. T. A. 277; *C. Niss & Sons, Inc.*, 22 B. T. A. 730; *Blum's, Inc.*, 7 B. T. A. 737, but nowhere does the law contemplate that a taxpayer may recover more than the cost of the property before taxable gain is realized.

Here the difference between cost and inventory value was reflected in the tax returns for prior years and a new cost established at market as of December 31, 1930. This cost when established was satisfactory to both petitioner and the Commissioner and it is not claimed that it was erroneous. We think the use of the cost as thus established in the computation of gain or loss on a subsequent sale of the securities clearly reflects petitioner's income for tax purposes, cf. *John G. Barbas*, 1 B. T. A. 589; *Hyams Coal Co.* v. *United States*, 26 Fed. (2d) 805, and that the Commissioner was justified in using such adjusted cost in recomputing the income tax liability of petitioner.

Whether the petitioner or the Commissioner benefited most from the method in the four years prior to 1931 we can not say, nor do we deem it material. The fact is petitioner made his returns and computed his income during those years by that method. The returns were approved by the Commissioner and taxes were paid in accordance therewith. A reference to the list of securities sold in 1931, which is set out above, indicates that most of them were pur-

chased in 1930 and that the market as reflected in the inventory at the end of the year was in most instances lower than cost. The difference was allowed as a deduction in 1930. Petitioner does not offer to go back and readjust his tax liability for 1927 to 1930, inclusive, and the statute of limitations has run against some if not all of those years. To adjust petitioner's cost basis to the original cost for the taxable year only would result in a distortion of income unjustified by the facts before us. We think petitioner has failed to show that the method contended for by him more clearly reflects his income than that used by the Commissioner, or that Commissioner's method does not clearly reflect his income. Cf. *W. R. Ramsey, supra; John G. Barbas, supra; Hurwitz* v. *Commissioner*, 45 Fed. (2d) 780.

The conclusion here reached is not inconsistent with the principle that in determining tax liability each taxable period should be separately considered for the purpose of determining gains or losses within the period. We are here concerned only with the basis to be used in computing gain or loss in 1931 on a sale of securities on hand at the beginning of the year. The fact that such cost basis had been readjusted in a prior year does not do violence to the above principle. For example, depreciation is taken into account and the cost adjusted on a sale of the property in a subsequent year, cf. *Firemen's Insurance Co., supra; United States* v. *Ludey, supra*, but this method does not result in a distortion of income in the year the property is sold.

The Commissioner is given wide discretion by the statute in his administrative determination of the method to be used in order to determine clearly the income of any taxpayer and, "short of being arbitrary or capricious or based on a clear demonstration of error, the determination in any single instance ought not to be disturbed", and it is "an attitude of the Board in the exercise of its jurisdiction not to interfere lightly with general administrative matters which the Congress has intrusted to the Commissioner's discretion." *Alfred E. Hamill*, 30 B. T. A. 955.

In *Finance & Guaranty Co.* v. *Commissioner*, 50 Fed. (2d) 1061, the court said:

As will be seen from the Act, Congress plainly placed the question of the proper use of inventories within the opinion of the Commissioner, and that question was left by Congress to the discretion of the Commissioner. In such a case a heavy burden of proving that the Commissioner's action was plainly arbitrary rests upon the taxpayer. *Lucas* v. *Kansas City Structural Steel Co.*, 281 U. S. 264. Where a statute commits to an executive department of the government a duty required in the exercise of an administrative discretion the decision of the executive department, as to such questions is final and conclusive, unless it is clearly proven arbitrary or capricious or fraudulent, or involving a mistake of law. * * * A study of the records

leads us to the conclusion that the action of the Commissioner was not only not arbitrary or capricious but was correct.

The question here is not merely one of fact as to the original cost of the securities, but is one of discretion as to whether the original cost or the adjusted cost is the proper cost basis to be used in the computation to clearly reflect income. This, we think, imposes a burden on the taxpayer much heavier than that of overthrowing a purely factual determination. Cf. *Alfred E. Hamill, supra; Lucas* v. *Kansas City Structural Steel Co.*, 281 U. S. 264. As was said in *Hyams Coal Co.* v. *United States, supra*, "Courts, in the absence of positive law to the contrary, will construe a revenue act as intended to reach actual income." Where, as here, a change from one method of accounting to another is necessary, the statute requires that the net income be computed in accordance with such method as in the opinion of the Commissioner clearly reflects income. Unless it is shown that the method used by the Commissioner is unreasonable or arbitrary, or that it does not clearly reflect income, it should be approved. Cf. *Maine Dairy Co.*, 4 B. T. A. 375; *Stuart A. Russell*, 12 B. T. A. 56; *Southern Abstract & Loan Co.*, 25 B. T. A. 1095; *Coley* v. *Pickering*, 21 Fed. (2d) 247. No such showing has been made here by the petitioner.

*Chatham & Phenix National Bank, supra*, and *MacMillan Co., supra*, cited and relied on by petitioner in support of his proposition that he should be allowed actual cost as his basis for the securities owned at the beginning of the year 1931 and sold during that year, are not authority on the question before us. Those cases hold that the fact that the tax has been erroneously computed in prior years does not justify an erroneous computation of the tax liability for any subsequent year.

Section 23 of the Revenue Act of 1928 provides that in computation of income there shall be allowed as deductions:

(a) All the ordinary and necessary expenses, paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered * * *.

Petitioner was engaged in the practice of law. In his return he gave his occupation as attorney. That was his principal business. He was also engaged in buying and selling stocks and securities for his own account on the New York Stock Exchange. Buying and selling for his own account does not bring him within the statutory definition of "dealer in securities."

He paid $600 in the taxable year for special statistical service, advice and information in handling his securities to the best advantage to gain profit or minimize his losses. During the year he had

some seventy transactions on the stock exchange involving more than $150,000 in sales. He bought and sold the securities for the profits he hoped to reap. The word "necessary" as used in the statute means "appropriate" and "helpful." *Blackmer* v. *Commissioner*, 70 Fed. (2d) 255.

Situated as petitioner was with reference to his business affairs and his method of handling them, he deemed it appropriate and helpful to make the expenditure in order to realize maximum returns. Profits made on his investments in his dealings on the stock exchange are taxable, and losses minimized serve to increase his taxable net income from other sources. It is not material that petitioner had other or larger business interests in which he was engaged. The statute is not so restricted as to confine deductions to a single business or principal business of the taxpayer. A taxpayer may carry on more than one trade or business at the same time. "Any trade or business" is the broad language of the statute.

We, therefore, conclude that taxpayer, in dealing on the stock exchange to the extent he was during the taxable year, was carrying on a trade or business within the meaning of the statute, and that the amount expended for statistical services, information and advice was reasonable, in view of the volume of business transacted, and was an ordinary and necessary expense in connection with the business and the deduction should be allowed.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

STERNHAGEN, VAN FOSSAN, and DISNEY concur only in the result.

———

MURDOCK, dissenting: The evidence shows that the petitioner was never entitled to inventory his securities for income tax purposes. The statute fixes but one basis for determining his gain or loss upon the sale of securities. That basis is cost. Sec. 113 (a), Revenue Act of 1928. Cost means the amount which he paid for the securities. It is a distortion of the term "cost" to interpret it as meaning the original cost adjusted for such changes, resulting from the unauthorized use in prior years of inventories, as will bring the petitioner and the Commissioner into balance in regard to income tax. If he had been entitled to inventory these securities in 1930, then his closing inventory figures would be a proper basis. See section 113 (a) (1) of the Revenue Act of 1928. But, since he was not entitled to use inventories in 1930, the closing inventory which he erroneously used is not his basis. The function of the Board is to decide correctly the petitioner's income tax liability for the year before it. It should not distort the law in order to correct mutual errors which

the taxpayer and the Commissioner have made in prior years; to attempt to do so will lead to hopeless confusion. I think the prevailing opinion is in error in permitting the use of a figure other than cost as a basis for computing the petitioner's losses from sales of securities.

LEECH agrees with this dissent.