James A. Warren and Marsha S. Warren v. Commissioner.
Warren v. Commissioner
Docket No. 7081-65.
United States Tax Court
T.C. Memo 1968-193; 1968 Tax Ct. Memo LEXIS 111; 27 T.C.M. (CCH) 940; T.C.M. (RIA) 68193; August 29, 1968. Filed James A. Warren, pro se, 19 Elm St., Coxsackie, N. Y. Lawrence Shongut, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined a deficiency in petitioners' income taxes for the calendar year 1962 in the amount of $4,153.97. Two questions are presented: I. Whether a claimed *112 business loss deduction on the sale of a 28-foot Chris Craft speedboat for $175 is deductible, and II. Whether a portion of petitioner husband's expenses for a 1962 Florida trip to investigate into the purchase of a submarine cable for its salvage value was deductible as a business expense. Findings of Fact Regarding Issue I - Claimed Loss on Sale of 28-Foot Chris Craft Boat The facts which have been stipulated are so found. The petitioners are individuals whose legal residence at the time of the filing of the petition herein and at all other relevant times has been Coxsackie, New York. Their joint income tax return for the year in issue was filed with the district director of internal revenue, Albany, New York. The issues presented involve the activities of James A. Warren alone and he will be referred to herein as petitioner. 941 Petitioner has lived at Coxsackie all of his life. He has practiced law there since 1936 and in addition has for many years prior to and including the year in issue owned and operated the local independent telephone company, an insurance agency, and he has also owned the controlling interest of a local bank. Commencing in about 1950 and continuously *113 through the year in issue petitioner has either rented or owned a second home at Lake George, New York, a summer resort area, about 90 or 100 miles from Coxsackie. Petitioner first became interested in speedboats during the 1940's and purchased his first speedboat, a 19 foot Chris Craft, for about $3,000, in about 1948. [1]
In October 1951 petitioner purchased a Curtiss Conqueror aircraft engine for $2,250, and in March 1952 he purchased a 28 foot Chris Craft hull containing no engine for $850. Petitioner was not a boat designer, had no formal education relative to naval architecture or marine engineering and did not even know how to modify an automobile engine for use in a boat. At the time he made these purchases, however, there was considerable local interest in ultra fast boats and petitioner, in his own words, "had many friends who had boats with various *114 motors in them." Petitioner had believed that his aircraft engine could be installed in his hull for $400 or $500 but when the work was commenced the engine proved to be too large, consequently, he traded it in on a smaller Curtiss D-12 engine which was finally installed in the hull in late 1953 or early 1954. It then became apparent that the installed engine had left hand rotation whereas the hull had been designed for an engine with right hand rotation, and consequently one side of the hull had to be lowered 4 inches to compensate. Petitioner also discovered at this time that Curtiss D-12 engines had not been made since the late 20's or early 30's and that consequently spare parts were not available. On October 27, 1951, and at about the same time as he purchased the Curtiss Conqueror aircraft engine, petitioner filed with the Greene County Clerks Office of the State of New York, his certificate that he was conducting and transacting business under the name of "Speedmarine Co."; however, no formal books or records were ever set up or maintained for that fictitious name company nor was any bank account ever established for it. Petitioner transacted the bulk of his transactions *115 as regards both of his boats from 1952 through the year in issue with Scott M. Henderson, Inc., of Cleverdale, New York, and Pilot Knob Boat Shop, Inc., of Pilot Knob, New York, but both accounts were carried in the name of Mr. James Warren and items were not segregated as between the two boats. Such items, in addition to labor and parts and materials, also include vast amounts of gasoline and oil. Petitioner used the boat in issue personally from the time it became operational in late 1953 or early 1954 and until it was sold for scrap in December 1962, though he contends that the boat was for sale at all times from 1953 or 1954 forward. From about 1953 through the year in issue the boat was kept either at petitioner's home at Lake George or at the Pilot Knob Boat Shop, Inc., at Pilot Knob. Pilot Knob was abount 10 miles from petitioner's Lake George home by water and about 30 miles away over land. The record does not reveal the percentages or amounts of time the boat was kept at either place. For the years 1951 through 1962 petitioner filed Schedule C's (profit (or loss) from business or profession) forms with his and his wife's joint income tax returns showing the business name *116 "Speedmarine" and stating the nature of his business variously as "motor boat sales," "motor boat development and sales," "motor boat sales and development," and "motor sales and development and cable salvage." As to the boat in issue such schedules listed, inter alia, a total of deductible "repairs" for the years 1952 and 1954 through 1961 of $3,073.70. They listed yearly storage charges varying from $107.80 to $147 for the years 1952 through 1962 in the total amount of $1,435.40 and the schedule for 1957 deducted a painting charge of $150.41. Such claimed deductible charges total $4,659.51. The schedule for 1962 shows receipt of $175 for sale of the boat in issue which, when deducted from petitioner's claimed tax base, left a claimed business loss of $7,219.30. 942 Findings of Fact Regarding Issue II - Submarine Cable In 1958 or 1959 petitioner and his brother, together with three men named Seaman, Stone and Fereter, purchased about $15,000 worth of submarine cable which they turned over to their newly formed corporation and shortly thereafter sold such corporation at a profit, the amount of which is undisclosed. One of the purchasers was an individual named Klein. *117 In 1960 petitioner and a man named Runkel purchased and sold another lot of submarine cable at an undisclosed point on the New England Coast, petitioner's profit thereon amounting to $679.25 which amount he returned on his "Speedmarine" Schedule C for that year. In 1961 petitioner had further dealings with Runkel regarding "junk cable" which resulted in a net profit to petitioner of $738.25 which amount he showed on his "Speedmarine" Schedule C for that year. In February 1962 Klein, who had been involved in the 1958-1959 cable transaction, called petitioner from Florida to advise that he had located a quantity of submarine cable off the shores of the coast of Panama and inquired whether petitioner was interested in a salvage operation. Petitioner replied that he was and shortly thereafter he flew to Florida to confer with Klein and the Panamanian who owned the cable. Several meetings were had and Seaman (who had also been in on the 1958-1959 cable transaction) was sent to Panama to investigate. Seaman returned in two or three days and at a final meeting petitioner decided against buying the cable on consideration of Seaman's report that there was an insufficient amount involved *118 to warrant the expense of salvage. On his 1962 income tax return petitioner claimed as deductible business expenses in connection with such Florida trip a total of $724.67. Petitioner's wife accompanied him on this trip to Florida which extended from February 28, 1962 to March 18, 1962, but petitioner did not claim any of her expenses as deductible. Neither did he claim any of his own expenses for meals or tips. The specific items which he did claim are as follows: One-half of his and his wife's hotel bills
$382.00
Petitioner's air fare
160.71
Car rental
147.21
Car parking
34.75
These items were included on petitioner's "Speedmarine" Schedule C for 1962. Opinion Issue I Petitioner contends that $7,366.30 of the $8,090.97 loss shown on Schedule C of the petitioner's 1962 income tax return is deductible as a business loss under the provisions of sections 165(c)(1) and (2). [2] Petitioner arrives at this figure by deducting the $175 which he received from the sale of the speedboat in issue in 1962 from his claimed tax base of $7,394.30 and by adding to that amount the $147 in storage charges on the boat which he paid in 1962. *119 The issue thus presented by petitioner is a factual one depending entirely upon whether or not petitioner was in a trade or business as regards this speedboat or whether his attempts to develop (and eventually sell it at a profit) this aircraft engine-powered speedboat amounted to a transaction entered into by him for profit. We have concluded from all of the facts that his activities in connection with this boat amounted to a personal hobby and that any deduction is expressly prohibited under section 262. [3]
Petitioner testified that he never contemplated going into the business of buying and selling boats and that the only boat ever sold by him was the boat in issue. He stoutly maintains that he entered into the transaction in 1951 for the sole purpose of developing an exceptional speedboat which he could sell at a profit, but the facts indicate otherwise. Petitioner admittedly had little or no knowledge concerning boat design or marine 943 *120 engineering. He testified that the modification costs far exceeded his expectations and although he contends he hoped for an eventual profit he did not ever say how much he hoped to get for the boat or even that he had ever set any sale price. The record does not show that the boat was ever advertised for sale nor does it detail any specific attempts to find a buyer. It simply indicates that the boat was "housed" for most of the time after it finally became operational at the Pilot Knob Boat Shop, Inc., and that that company was informed that it was for sale. Petitioner admits that he did use the boat personally during this period but states that no other member of his family ever operated it. We note, however, that repairs, gasoline and oil, totaling more than $3,000, were deducted on petitioner's Schedule C's for the years 1952 and 1954 through 1961. The fact that they were deducted indicates that they were not development expenses which would have been capitalized. It is true that petitioner filed a fictitiouss name certificate with the State of New York in 1951, and commenced filing Schedule C's with his income tax returns that same year, but we attach little importance to *121 either such circumstance. The Schedule C's gave petitioner a convenient way to deduct claimed expenses and storage charges which, through the years, totaled more than $4,500, and they have apparently all been allowed with the exception of the claimed $147 storage charge for 1962. As we said in American Properties, Inc., 28 T.C. 1100, affirmed per curiam 262 F. 2d 150 (C.A. 9, 1958) at 1111: It has been held that whether an enterprise is conducted as a business for profit is a matter of intention and good faith, and all the facts in a particular case are to be considered. Commissioner v. Field, (C.A. 2) 67 F. 2d 876, affirming 26 B.T.A. 116 See also Doggett v. Burnet, (C.A.,D.C.) 65 F. 2d 191; Thacher v. Lowe, 288 F. 994; Edwin S. George, 22 B.T.A. 189. * * * Intention is a question of fact to be determined not only from the direct testimony as to intent, but from a consideration of all the evidence, including the conduct of the parties. Since the quoted language was in connection with *122 claimed deductible expenses on a speedboat which was held to be the private hobby of the owner of American Properties, Inc., we look upon such language as particularly appropriate in the instant case. We conclude that even though the petitioner may have had some idea in the back of his mind that his aircraft powered speedboat might be spectacularly successful and eventually bring him a profit, that his real and dominant motive was purely personal, and that the claimed loss is therefore not deductible since it falls squarely within the prohibition of section 262, supra. Issue II We take a different view of petitioner's claimed 1962 business expense deduction under section 162 as regards his consideration of the salvageable submarine cable off the coast of Panama. The question to be decided is again a factual one, i.e., whether petitioner's activities regarding cable and its salvage are sufficient to amount to a business on his part. The record shows that he had engaged in three successful such operations in the years immediately preceding 1962 and had been taxed on those profits. The men with whom he worked in the contemplated 1962 transaction (Klein and Seaman) had both *123 been involved in the 1958-1959 cable activities. Since petitioner decided against buying the Panamanian cable his ordinary and necessary expenses enabling him to come to this decision are deductible only if the record supports the proposition that petitioner was in the cable salvage business. We believe it does. As we stated in L. T. Alverson, 35 B.T.A. 482, 488 (1937), acq. 1937-1 C.B. 1: It is not material that petitioner had other or larger business interests in which he was engaged. The statute is not so restricted as to confine deductions to a single business or principal business of the taxpayer. A taxpayer may carry on more than one trade or business at the same time. * * * We observe that in the instant case the petitioner's ownership and operation of the local independent telephone company at Coxsackie undoubtedly qualified him to know a great deal about cable and its value. In the usual "second business" case the taxpayer's principal activities detract from his involvement in the claimed second business. The facts here are otherwise. Although *124 we feel that the question is a close one, we have concluded from the 944 entire record that petitioner was in the cable salvage business and that his ordinary and necessary expenses in connection therewith in 1962 are properly deductible. See Theodore Sabelis, 37 T.C. 1058 (1962), acq. 1962-2 C.B. 5; also cf. Ignaz Schwinn, 9 B.T.A. 1304 (1928). We feel that petitioner has attempted to be very fair in the amount which he claims to be deductible in that he has included nothing for meals or tips and only one-half of his and his wife's hotel bills in connection with the Florida trip, but we have concluded from the record that only 5 or 6 days' time could have reasonably been spent in connection with his investigation and consideration, and since his claimed hotel bills, car rental and car parking charges presumably were for the entire 18 days spent in Florida, we have reduced them by two-thirds. We therefore allow petitioner a deduction in 1962 as an ordinary and necessary business expense [in] the amount of $348.70 instead of the $724.67 which he claimed. Decision will be entered under Rule 50. Footnotes
1. At one point in his testimony petitioner stated that he had owned a speedboat for 15 or 20 years, but his statement that he purchased his first speedboat in about 1948 was definite, consequently, we have conluded that his 15- or 20-year estimate was made with respect to the time of the trial herein in December 1967.↩
2. All statutory references are to the Internal Revenue Code of 1954. These sections read in pertinent part: SEC. 165. * * * (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * (c) * * * In the case of an individual, the deduction under subsection (a) shall be limited to - (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; * * *↩
3. SEC. 262 * * * Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, * * * expenses.↩