ALFRED A. GENTILE AND CAROLE J. GENTILE, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 509-74.     Filed October 1, 1975.

*Victor Chini,* for the petitioners.
*David R. Smith,* for the respondent.

2

## OPINION

The sole issue presented for decision is whether petitioner's gambling activities constituted a trade or business so as to subject income derived therefrom to inclusion as self-employment income for purposes of the self-employment tax imposed by section 1401. Petitioner urges that, although he gambled regularly during 1971 and depended solely upon his gambling winnings for the support of his family of five, he was not engaged in a trade or business because he neither provided nor held himself out as a provider of any goods or services to any other person. Respondent argues that a trade or business is not limited to the offering of goods or services to others; rather it is an individual's everyday efforts to earn a living, characterized by continuity, regularity, and profit motive.

The Self-Employment Contributions Act of 1954, sections 1401, et seq., imposes a tax on net earnings from self-employment "derived by an individual from any trade or business carried on by such individual." Section 1402(c) provides that the term "trade or business" shall have the same meaning as when used in section 162, which provides for deductions of ordinary and necessary expenses incurred in carrying on any trade or business. "Trade or business" is nowhere defined in the Internal Revenue Code or in the regulations.

---

[4] The parties have stipulated that the petitioner's criminal record with respect to gambling-related offenses is as follows:

Federal charge: Arrested on Jan. 10, 1964, and charged with three counts of failing to pay occupational tax and wagering excise taxes. Disposition: Guilty plea to one count on Nov. 9, 1964, remaining counts dismissed. Sentence: $1,500 fine.

State charges: Arrested on Dec. 17, 1961, and charged with contriving a lottery. Disposition: Conviction. Sentence: 6 months (suspended) and $100 fine.

Arrested on Dec. 11, 1967, and charged with promoting gambling, second degree; arrested on Dec. 15, 1967, and charged with possession of a gambling device. Disposition: Conviction. Sentence: $500 fine.

Arrested on Oct. 7, 1969, and charged with two counts of promoting gambling, second degree and two counts of conspiracy, fourth degree. Disposition: Guilty plea to one count of conspiracy, other counts dismissed. Sentence: $100.

Whether a particular taxpayer's activities amount to the carrying on of a trade or business is essentially a factual determination. *Higgins v. Commissioner*, 312 U.S. 212, 217 (1941). While there are various factors to be considered in making such a determination, none alone is dispositive. *Herbert R. Barrett*, 58 T.C. 284, 288 (1972), acq. in result 1974-1 C.B. 1.

Respondent urges an expansive reading of the term "trade or business" and turns first for support to *Flint v. Stone Tracy Co.,* 220 U.S. 107, 171 (1911), wherein the Supreme Court spoke of business as that "which occupies the time, attention, and labor of men for the purpose of a livelihood or profit." It is well settled that this broad definition,[5] adopted for construction of the Corporation Tax Law of 1909, is not controlling here. *United States v. Pyne*, 313 U.S. 127, 131 (1941); *Higgins v. Commissioner, supra* at 217; *McDowell v. Ribicoff*, 292 F.2d 174, 178 (3d Cir. 1961). Respondent is correct in asserting that the continuity and regularity of petitioner's activities and the presence of a profit motive are elements of carrying on a trade or business. While these elements, which petitioner substantially concedes to be present in this case,[6] may be necessary to a finding of a trade or business, they are not sufficient. A trade or business involves

---

[5] We note that the Supreme Court also observed that "'Business' is a very comprehensive term and embraces everything about which *a person can be employed."* See 220 U.S. at 171. [Emphasis added.]

[6] Petitioner concedes the regularity and continuity of his gambling pursuits and respondent assumed that he gambled for gain. It is not altogether clear, however, that this petitioner's expectation of gain amounts to a profit motive. Profit motive is not measured objectively by the reasonableness of the taxpayer's expectation of profit, but rather by whether the taxpayer embarked upon his course of conduct with the good-faith purpose of or in the good-faith belief of making a profit. *Doggett v. Burnet*, 65 F.2d 191, 194 (C.A.D.C. 1933); *Margit Sigray Bessenyey*, 45 T.C. 261, 273 (1965), affd. 379 F.2d 252 (2d Cir. 1967); *Norman C. Demler*, T.C. Memo. 1966-117.

One habitual gambler-taxpayer, who had supplemented experience with an extensive 10-year study of the game of craps, was denied a sec. 212 deduction for travel and lodging expenses incurred in his 12 trips to Las Vegas in 1 taxable year on the ground that his gambling activities were not motivated by a bona fide profit-seeking purpose. The taxpayer's hope for gain was tempered with a realistic acknowledgment that few people win at the craps table, a lesson learned by the history of personal losses. *James T. Shiosaki*, T.C. Memo. 1971-24, affd. 475 F.2d 770 (9th Cir. 1973); see also *James T. Shiosaki*, T.C. Memo. 1975-28; *Edward T. Dicker*, T.C. Memo. 1963-82.

At least one commentator on gaming would distinguish between the validity of one's expectation of profit from casino-type games of pure chance, on the one hand, and the validity of one's expectation of profit from gambling activities such as horserace betting, which involve some element of skill, on the other hand. Oswald Jacoby on Gambling (1963).

Since petitioner's activities are found to fall short of a trade or business in other respects, we need not decide whether petitioner's expectation of gain was infused with sufficient skill to justify concluding that he had the requisite profit motive.

something more than the production of income for Federal income tax purposes. Compare sec. 162 with sec. 212.

As further support for his position, respondent cites several cases in which he contends that a trade or business was found to exist where there was no showing of an offering of goods or services. Thus, in *Paul J. O'Connell,* T.C. Memo. 1974-128, a tax consultant was held liable for the self-employment tax notwithstanding that he had but a single client. But, there was no evidence that he did not seek other clients, his client was not his former employer (cf. *Herbert R. Barrett, supra*), and he did not dispute that he was "in business." In *Lincoln Adolphus Bolt,* 50 T.C. 1007 (1968), and *Norman C. Demler,* T.C. Memo. 1966-117, the issue was whether the taxpayer had the requisite profit motive in respect of his automobile-racing activities. Participating in automobile racing for money is clearly providing an entertainment service to the viewing audience. We thus find the cases relied upon by respondent inapplicable to the case at bar.[7]

Petitioner relies on the oft-cited definition of carrying on a trade or business as that which "involves holding one's self out to others as engaged in the selling of goods or services." *Deputy v. du Pont,* 308 U.S. 488, 499 (1940) (Frankfurter, *J.,* concurring); see *White's Will v. Commissioner,* 119 F.2d 619, 621 (3d Cir. 1940). The vitality of this formulation for purposes of section 162 recently has been reiterated by the Supreme Court. *Snow v. Commissioner,* 416 U.S. 500, 502-503 (1974) (distinguishing the narrower concept of trade or business under section 162 from the broader concept under section 174). Furthermore, this "goods and services" test is precisely the one applied by this Court in *Herbert R. Barrett,* 58 T.C. at 290, where the issue was the applicability of the self-employment tax to income received by the taxpayer under a contract not to compete with his former employer and to render advisory and consulting services to such employer upon request. Both parties agreed that refraining from competition did not constitute a trade or business. We held that the consulting agreement likewise was not a trade or business for want of an offering of services to others within the meaning of Mr. Justice Frankfurter's concurring opinion in *Deputy v. du Pont,* 308 U.S. at 499. Moreover, in *Max Silver,* 42 B.T.A. 461

---

[7] None of the actions which were instituted against petitioner (see n. 4 *supra*) involved a statutory provision keyed to the carrying on of a trade or business (see, e.g., secs. 4401(c) and 4461(a)), aside from the fact that the activities involved therein occurred in taxable years not before us and are, therefore, of doubtful relevance.

6

(1940), it was held that a taxpayer could not deduct the expenses of his trip to Ireland to collect on his winning ticket in the Irish Sweepstakes, on the ground that they were not incurred in carrying on any trade or business.[8] See also Rev. Rul. 55-258, 1955-1 C.B. 433, where respondent ruled that income derived by an individual from devoting approximately 5 hours a day to entering various prize contests was not the product of carrying on a trade or business for purposes of the self-employment tax.[9]

Upon stepping up to the betting window, petitioner was not holding himself out as offering any goods or services to anyone. Petitioner's use of his own resources to wager and his dedicated studies of the activities on which he wagered are akin to the management and investment of one's own estate and the study of market reports in order to do so more knowledgeably. This latter passive activity is clearly not within the bounds of a trade or business. See *Higgins v. Commissioner*, 312 U.S. at 218.

Accordingly, we hold that petitioner's wagering activities were not the carrying on of any trade or business and that his wagering winnings were not subject to the self-employment tax.[10]

*Decision will be entered for the petitioners.*

---

[8] Compare *Harry Kanelos,* a Memorandum Opinion of this Court dated Sept. 21, 1943, where travel expenses incurred in the collection of the Irish Sweepstakes were allowable as deductions as nontrade or nonbusiness expenses incurred in the production of income.

[9] Respondent seeks to distinguish this ruling on the ground that the taxpayer entering the contests had other part-time employment. This distinction is without merit, since a finding that a taxpayer is engaged in one trade or business does not preclude a finding that he engaged in another trade or business as well. *L. T. Alverson,* 35 B.T.A. 482, 488 (1937).

[10] In so holding, we are not unmindful of respondent's citation to the case of *Shiffer v. Celebrezze,* Hearing Examiner Dec., affd. in an unpublished decision by the U.S. District Court (D.R.I.), Civ. No. 3215, Dec. 6, 1966, 1 CCH Unemp. Ins. Rptr. pars. 10,608.139, 10,620.711, involving claims for social security benefits. Following *Herbert R. Barrett,* 58 T.C. 284, 289 (1972), we find such decision of no precedential value in the case at bar.