ESTATE OF DAN B. CULL, DECEASED, WILLIAM J. CULL, ADMINISTRATOR, AND CONNIE E. CULL, SURVIVING SPOUSE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Cull v. Commissioner
Docket No. 7608-80.
United States Tax Court
T.C. Memo 1983-80; 1983 Tax Ct. Memo LEXIS 699; 45 T.C.M. (CCH) 691; T.C.M. (RIA) 83080; February 8, 1983. *699 During 1977, decedent was employed as a pari-mutuel clerk at various racetracks in northern Ohio. He also was an habitual gambler who placed wagers almost daily in 1977. Petitioners elicited uncontradicted testimony that decedent was a "professional gambler" who devoted substantial time and energy to his gambling activities. Held, decedent was in the separate trade or business of gambling in 1977. Accordingly, the gambling losses incurred by him and used to offset gambling winnings do not constitute items of tax preference. Ditunno v. Commissioner, 80 T.C.     (Feb. 7, 1983), followed. Gerald A. Berk,Thomas J. Escovar and Benjamin F. Farah, for the petitioners. Kristine A. Roth, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: By notice of deficiency dated March 6, 1980 respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1977 in the amount of $6,286.81. After concessions, the issues for decision are (1) whether Dan B. Cull was in the trade or business of professional gambling; and, if not, (2) whether respondent correctly determined the amount of minimum tax attributable to the excess itemized deductions *700 generated by Mr. Cull's gambling activities. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. William J. Cull, administrator for the Estate of Dan B. Cull, a petitioner herein, resided in Madison, Ohio at the time of filing the petition herein. Petitioner Connie Cull, surviving spouse of Dan B. Cull, resided in Aurora, Ohio at the time of filing the petition herein. Decedent, Dan B. Cull (hereinafter decedent) and petitioner Connie Cull were married during 1977 and they filed a joint Federal income tax return for that year with the Internal Revenue Service Center, Cincinnati, Ohio. An amended return was filed with the Cincinnati Service Center on May 25, 1978 on which the Culls reported as gross receipts of a sole proprietorship gambling winnings in the amount of $47,908.10, which previously had been reported as wages or salary or other compensation on their original Form 1040. Petitioners deducted the same amount as gambling losses. During 1977 decedent was employed full time as a pari-mutuel clerk at various racetracks in northern Ohio. He and his wife *701 received income other than from Mr. Cull's gambling in the year 1977 from the following sources and in the following amounts: Source of payments
Amount
Grandview Raceway
$ 3,616.00 Painesville Raceway
3,168.00 Summit Racing Club, Inc.
2,044.00 Cranwood Racing Club, Inc.
1,207.00 Thistledown Racing Club, Inc.
2,341.00 Randall Racing Club, Inc.
2,982.00 Northfield Park Associates
5,605.00 Interest income
101.96 Dividends
27.09 Income from rental property
(2,278.33)
Farm income
(743.05)
Sale of horse
(400.00)
Total
$17,670.67  Decedent was anhabitual gambler who placed wagers almost daily in 1977. When he was not working at his job, he gathered information for purposes of placing bets. He often arrived at the racetrack as early as 6 o'clock in the morning in order to question owners, trainers and jockeys. Near the end of the year, decedent took a number of days off from his regular job as pari-mutuel clerk in order to devote his entire day to betting for his own account. Decedent only bet with his own money; he did not place bets on behalf of others or quote odds for any race during 1977. Decedent maintained a detailed ledger in which he recorded the amount wagered on each race. In the ledger, the *702 column "won" listed the amounts by which the receipts for each race exceeded the amount of the wagers for each race. The entries in the column marked "lost" were the amounts by which the wagers for a particular race exceeded the receipts of that race. The ledger tabulated winnings and losses on a per-day basis, ultimately arriving at a daily net won-or-loss figure. Computed on this basis, decedent had $56,694.40 of net winnings on winning days and $74,926.90 of net losses on losing days. Respondent, in his notice of deficiency, calculated total winnings by adding all entries in the "won" column of decedent's ledger to arrive at a total amount of $130,411. These winnings were more than offset by gambling losses for the year. OPINION The first issue we address is whether decedent was engaged in the trade or business of gambling during the year in question. If so, the gambling losses incurred by him and used to offset gambling winnings would not constitute items of tax preference. [1] *703 If not, the utilized gambling losses would constitute items of tax preference. [2] *704 In Gentile v. Commissioner,65 T.C. 1 (1975), we similarly were faced with the issue of whether a taxpayer's gambling activities constituted a trade or business. We held that one must hold oneself out to others as offering goods or services in order to be engaged in a trade or business. Gentile v. Commissioner,supra at 5-6. Petitioners request us to reexamine our position in Gentile. Respondent, on the other hand, relies entirely upon the proposition that a gambler who does not offer goods or services to others is not in the trade or business of gambling. In Ditunno v. Commissioner, 80 T.C.     (Feb. 7, 1983), recently decided by this Court, we held that the goods or services test applied in Gentile was overly restrictive, and that a proper analysis must rest on the facts and circumstances of each case. In determining whether a gambler who bet solely on his own account was in a trade or business, we looked to the character of his gambling activities, finding that they were sufficiently "active" to elevate them to *705 trade or business status. On brief, respondent relies upon the continuing vitality of the goods or services test as applied in Gentile v. Commissioner,supra. He did not refute petitioners' contention that decedent was a "professional gambler" who devoted substantial time and energy to his gambling activities. In effect, respondent made no attempt to contradict the testimony of petitioners' witness that decedent was an "active" gambler. Accordingly, based upon this uncontradicted testimony, we hold that decedent was in the separate trade or business of gambling during 1977. [3] Due to our holding, we need not reach the second issue in this case. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. As the law stood in 1977, sec. 57(a)(1), I.R.C. 1954, provided that "adjusted itemized deductions" constituted items of tax preference. The phrase "adjusted itemized deductions" was defined as the amount by which the sum of the deductions for the taxable year, with certain exceptions, exceeded 60 percent of the taxpayer's adjusted gross income for the taxable year. Sec. 57(b)(1). Excepted from the deductions added into this formula were "deductions allowable in arriving at adjusted gross income." Sec. 57(b)(1)(A)↩. Sec. 62(1) provides that deductions attributable to a trade or business carried on by the taxpayer constitute deductions allowable in reaching adjusted gross income. Thus, if petitioner was in the trade or business of gambling, his gambling losses would not constitute items of tax preference. 2. This is because such losses are deductible pursuant to sec. 165(d), and, therefore, because the resultant deductions were not excluded from the definition of adjusted itemized deductions under sec. 57(b)(1), they constituted items of tax preference within sec. 57(a)(1). For taxable years beginning after Dec. 31, 1982, individuals are no longer subject to the minimum tax under sec. 56 though they are subject to the alternative minimum tax imposed pursuant to sec. 55. However, under the newly expanded version of sec. 55, deductible gambling losses do not have the effect of increasing an individual's alternative minimum tax. See sec. 55(b)(1)(B) and sec. 55(e)(1)(A).
3. A taxpayer may be engaged in more than one trade or business. See Curphey v. Commissioner,73 T.C. 766, 775-776↩ (1980), on appeal (9th Cir., Nov. 24, 1980).