**ESTATE OF Dan B. CULL, Deceased, William J. Cull, Administrator, and Connie E. Cull, Surviving Spouse, Petitioners-Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

No. 83–1601.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 7, 1984.

Decided Oct. 23, 1984.

Glenn L. Archer, Jr., Asst. Atty. Gen., Jonathon Cohen, Bruce Ellisen (argued), Michael L. Paup, Tax Div., Dept. of Justice, Joel Gerber, Acting Chief Counsel, I.R.S., Washington, D.C., for respondent-appellant.

Gerald A. Berk (argued), Steuer, Escovar & Berk Co., Cleveland, Ohio, Robert D. Kaplow, Rubenstein, Isaacs, Lax & Bordman, Southfield, Mich., for petitioners-appellees.

Before KEITH and JONES, Circuit Judges, and BALLANTINE, District Judge.*

KEITH, Circuit Judge.

This is an appeal by the Commissioner of Internal Revenue, pursuant to 26 U.S.C. § 7482, from a decision of the United States Tax Court. The issue presented is whether a full-time gambler for his own account can be engaged in a "trade or business" within the meaning of 26 U.S.C. § 62(1) for the purpose of determining adjusted gross income[1] even though he offers no goods or services to others. Petitioner-appellee contended that Dan Cull could deduct his net gambling losses for purposes of arriving at his adjusted gross income subject to tax, regardless of whether these losses exceeded his winnings. In so doing, Mr. Cull could avoid a minimum tax that would otherwise be due on excess itemized deductions pursuant to 26 U.S.C. § 56(a).[2] The tax court held in favor of the estate of Dan B. Cull. We reverse.

## I.

### FACTS

During 1977 the decedent, Dan B. Cull, was employed full time as a pari-mutuel clerk at various racetracks in northern Ohio. Cull was a habitual gambler who placed wagers almost daily. He and his wife, Connie E. Cull, received income totalling $17,670.67 during 1977, from sources other than Mr. Cull's gambling winnings.

When Mr. Cull was not working as a pari-mutuel clerk, he gathered information for the purpose of placing bets. He often arrived at the race track as early as 6:00 a.m. in order to question owners, trainers and jockeys. Near the end of 1977, he took a number of days off from his regular clerk job in order to devote his entire day to betting.

Mr. Cull only gambled with his own money on his own account. He did not place bets on behalf of others or quote odds on any race in 1977.

Mr. Cull maintained a detailed ledger in which he recorded the amount wagered on each race. In the ledger, the "won" column listed the amounts by which the receipts from a particular race exceeded the amount of the wagers on that race. The "loss" column listed the amounts by which the wagers on a particular race exceeded the receipts from that race. The ledger tabulated winnings and losses on a daily basis, ultimately arriving at a daily net won-or-loss figure. Computed on this basis, Mr. Cull had $56,694.40 of net winnings on winning days and $74,926.90 of net losses on losing days. Addition of all entries in the "won" column results in a total amount of $130,411. These winnings were more than offset by gambling losses for the years.

Dan and Connie Cull were married throughout 1977. They filed a joint federal income tax return for that year and reported $47,908.10 of gambling winnings as wages or other compensation and $47,908.10 of gambling losses as an itemized deduction.

They subsequently filed an amended 1977 return in which they reported the

---

* Honorable Thomas A. Ballantine, Jr., United States District Judge for the Western District of Kentucky, sitting by designation.

1. Title 26 U.S.C. § 62(1) provides:
   "Sec. 62. **Adjusted Gross Income Defined.**
   "For purposes of this subtitle, the term 'adjusted gross income' means, in the case of an individual, gross income minus the following deductions:
   (1) **Trade and business deductions.**—The deductions allowed by this chapter (other than by part VII of this subchapter) which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee."

2. Title 26 U.S.C. § 56 provides:
   "Sec. 56 **Imposition of Tax.**
   (a) **General Rule.**—In addition to the other taxes imposed by this chapter, there is hereby imposed for each taxable year, with respect to the income of every person, a tax equal to 15 percent of the amount by which the sum of the items of tax preference exceeds the greater of—
   (1) $10,000, or
   (2) the regular tax deduction for the taxable year (as determined under subsection (c))."

$47,908.10 of gambling winnings as gross receipts of a sole proprietorship and deducted the same amount as gambling losses. Mr. Cull died in 1979.

The Commissioner determined that Mr. Cull received total gambling winnings of $130,411 and that only $130,411 of the aforementioned gambling losses were deductible. The Commissioner further determined that the deduction for gambling losses was not attributable to a trade or business. The deduction was therefore not allowable in determining adjusted gross income under Section 62(1). Rather, it was an itemized deduction. A portion of those deductions was treated as items of tax preference subject to the minimum tax imposed by Section 56 of the Internal Revenue Code. Accordingly, the Commissioner asserted a deficiency in federal income tax against the estate of Dan B. Cull for the taxable year 1977 in the amount of $6,286.81. The estate, through its administrator, William J. Cull, and the surviving spouse, Connie E. Cull, filed a petition in the tax court for redetermination of the deficiency.

The estate argued that Mr. Cull was carrying on a trade or business as a professional gambler, and that therefore his gambling losses did not give rise to items of tax preference subject to the minimum tax. The estate also argued that the Commissioner had incorrectly determined the amount of Mr. Cull's 1977 gambling losses, so that even if Mr. Cull were not carrying on a trade or business, the Commissioner had incorrectly determined the amount of the minimum tax.

The Commissioner relied on *Gentile v. Commissioner*, 65 T.C. 1 (1975), which defined "carrying on a trade or business" as holding oneself out to others as engaged in the selling of goods or services. In *Gentile*, the court held that a gambler betting solely on his own account was not carrying on a trade or business. While the instant case was pending, the tax court, in *Ditunno v. Commissioner*, 80 T.C. 362 (1983), overruled *Gentile* and rejected the "trade or business" standard in favor of a "facts and circumstances" test. In *Ditunno*, which also involved the application of the minimum tax to a gambler, the court concluded that the taxpayer was an active gambler in the trade or business of gambling.

In the instant case, the tax court found that Mr. Cull was an active, professional gambler who devoted substantial time and energy to his gambling activities and that under *Ditunno*, he was in a trade or business. Therefore, Mr. Cull's gambling losses were deducted in determining gross income under Section 62(1), he had no items of tax preference, and he was not subject to the minimum tax. Accordingly on June 1, 1983, the tax court entered a decision that determined a deficiency of only $8.00. Since the tax court held that Mr. Cull's gambling losses were not items of tax preference, it did not reach the issue of whether the Commissioner had properly determined the amount of those losses. This appeal followed.

## II.

### DISCUSSION

An accurate definition of the phrase "carrying on a trade or business" is essential to the disposition of this case. Because neither "trade" nor "business" is defined in the Internal Revenue Code or in the Treasury Regulations, defining the phrase has been left to the judiciary. In *Deputy v. duPont*, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940), the Supreme Court held that costs resulting from a short sale of stock by shareholders to raise capital for a financially troubled corporation that was legally unable to act were not deductible in computing the shareholders' income. The Court reached this result because the costs resulted from the taxpayers' business rather than that of the corporation and were neither "ordinary" nor "necessary" business expenses. In concurring with the result, Justice Frankfurter defined trade or business in order to show that the stockholders' activities did not fit within the meaning of the term: "carrying on any

trade or business, within the contemplation of § 23(a) [precursor to Section 62(1)], involves holding one's self out to others as engaged in the selling of goods or services. This the taxpayer did not do." *Id.* at 499, 60 S.Ct. at 369. (Franfurter, J., concurring).

■ The continuing importance of this definition is demonstrated by an examination of the leading relevant cases. In *Gentile v. Commissioner,* 65 T.C. 1 (1975), the court decided that the "[p]etitioner's gambling winnings were not derived from the carrying on of any trade or business" because, as petitioner asserted, "he neither provided nor held himself out as a provider of any goods or services to any other person." *Id.* at 3. The requirement of holding one's self out to others has been applied by the circuit courts in other similar circumstances. In a leading case involving the characterization of personal investing, the Second Circuit held that "By the common speech of men, a person who does nothing beyond looking after his own investments and receiving the income from them is not conducting a trade or business." *Higgins v. Commissioner,* 111 F.2d 795, 796 (2d Cir.1940), *aff'd,* 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783 (1941). The unifying principle is that involvement in any profitable activity using only personal funds for one's private benefit, without offering the services to others, does not constitute participation in a trade or business.

Appellees assert that in affirming *Higgins,* the Supreme Court set forth a "facts and circumstances" test to determine if activities constitute "carrying on a business." In *Higgins,* the Court stated:

To determine whether the activities of a taxpayer are "carrying on a business" requires an examination of the facts in each case. As the [Second] Circuit Court of Appeals observed [below], all expenses of every business transaction are not deductible. Only those are deductible which relate to carrying on a business. The Bureau of Internal Revenue has this duty of determining what is carrying on a business, subject to reexamination of the facts by the Board of Tax Appeals and ultimately to review on the law by the courts on which jurisdiction is conferred.

*Higgins v. Commissioner,* 312 U.S. at 217–18, 61 S.Ct. at 478.

This language, which appellees believe states a legal standard, more appropriately establishes factors to be considered before the application of a legal standard and is not an alternative to Justice Frankfurter's holding out test. It is not enough to say that whether a person is engaged in a trade or business is a question of facts or circumstances. The crucial question is *what* facts or circumstances are necessary to the determination that a taxpayer is engaged in a trade or business. That is to say, the 'facts and circumstances' approach describes a predicate for application of a legal test rather than a legal standard. *Gajewski v. Commissioner,* 723 F.2d 1062, 1066 (2d Cir.1983).

This being the case, the two standards are clearly in concert. *Higgins* stands for the proposition that determining whether one is involved in a trade or business is a question of fact while the Frankfurter concurrence in *duPont,* sets forth a minimum standard for establishing taxpayers' involvement in a trade or business. The following courts have established a number of other facts to be considered in making these determinations. *See Stanton v. Commissioner,* 399 F.2d 326, 329–30 (5th Cir.1968); *McDowell v. Ribicoff,* 292 F.2d 174, 178 (3d Cir.), *cert. denied,* 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 135 (1961) (considering whether or not taxpayer's efforts were marked by continuity and regularity essential to involvement in a trade or business); *Daily Journal Co. v. Commissioner,* 135 F.2d 687, 688 (9th Cir.1943); *Bessenyey v. Commissioner,* 379 F.2d 252, 255–56 (2d Cir.), *cert. denied,* 389 U.S. 931, 88 S.Ct. 293, 19 L.Ed.2d 283 (1967) (considering whether or not the taxpayer intends to make a profit).

The "facts and circumstances" test was cited in the recent tax court case that overruled *Gentile,* thus making the "holding

out" test inapplicable to cases such as this one. *Ditunno v. Commissioner,* 80 T.C. 362 (1983). The *Ditunno* court found Justice Frankfurter's "holding out" test too restrictive and inappropriate because the majority in *duPont* issued its ruling without considering the meaning of "trade or business." The *Ditunno* court ignores the impact of the definition in Justice Frankfurter's concurrence. In determining if one is carrying on a "trade or business," the most basic requirement has remained that of "holding one's self out to others as engaged in the selling of goods or services." *Deputy v. duPont,* 308 U.S. at 499, 60 S.Ct. at 369. The continued vitality and importance of this view has been acknowledged in a number of circumstances. *See, e.g., Snow v. Commissioner,* 416 U.S. 500, 94 S.Ct. 1876, 40 L.Ed.2d 336 (1974) (using Justice Frankfurter's definition of 'trade or business' as the standard for comparing Section 162 with Section 174). Similarly, the Second Circuit considers the "goods or services" requirement to be part of the law. *Grosswald v. Schweiker,* 653 F.2d 58 (2d Cir.1981). The importance of the "goods and services" test was also stated in the dissent to *Ditunno,* where Chief Judge Tannenwald stated: "I know. of no case (and my research has not produced any) where a taxpayer did not deal with third parties, i.e., hold himself out, and was nevertheless found to be carrying on a trade or business." *Ditunno v. Commissioner,* 80 T.C. at 374; *see also Gajeyski v. Commissioner,* 723 F.2d at 1067 (interpreting *Higgins* as not implying that a person who fails to publicly offer goods or services could be carrying on a trade or business). The importance of the test is such that the Second Circuit has called it the minimum standard for determining whether a taxpayer is engaged in a trade or business. *Gajewski v. Commissioner,* 723 F.2d at 1066.

█ Given the above discussion, it is clear that Dan Cull's failure to hold himself out to others as a gambler precluded him from being engaged in a trade or business within the meaning of Section 62(1). Accordingly, the ruling of the tax court is hereby reversed and the previous findings of the Commissioner that Mr. Cull's gambling losses were items of tax preference subject to the minimum tax is restored. The case is also remanded for trial on the issue of whether the Commissioner properly determined the amount of gambling losses.