**Robert P. GROETZINGER,**
**Petitioner-Appellee,**

v.

**COMMISSIONER OF INTERNAL REV-**
**ENUE, Respondent-Appellant.**

**No. 84–2507.**

United States Court of Appeals,
Seventh Circuit.

Argued April 11, 1985.

Decided Aug. 21, 1985.

Bruce R. Ellisen, Asst. Atty. Gen., Tax Div., Washington, D.C., for respondent-appellant.

Carroll Baymiller, Baymiller, Christison & Radley, Peoria, Ill., for petitioner-appellee.

Before CUMMINGS, Chief Judge, FLAUM, Circuit Judge, and PECK, Senior Circuit Judge.*

CUMMINGS, Chief Judge.

The sole issue presented in this appeal is whether the Tax Court erred in holding that the taxpayer's gambling activities constituted a "trade or business" for purposes of Section 62(1) of the Internal Revenue Code, 26 U.S.C. § 62(1). The Commissioner asserts that the taxpayer's failure to hold himself·out to others as offering goods or services precludes characterization of his activities as a trade or business. We disagree and affirm the Tax Court decision.

I

The significance of the Tax Court's holding that the activities of the taxpayer, Robert P. Groetzinger, constituted a trade or business is that it allows Groetzinger to deduct gambling losses from gross income in arriving at adjusted gross income,[1] and

---

* The Honorable John W. Peck, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, is sitting by designation.

1. Adjusted gross income is defined in 26 U.S.C. § 62. That Section provides in pertinent part:

**§ 62. Adjusted gross income defined**

For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions:

**(1) Trade and business deductions.**—The deductions allowed by this chapter (other than by part VII of this subchapter) which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee.

**(2) Trade and business deductions of employees.**—

**(A) Reimbursed expenses.**—The deductions allowed by part VI (sec. 161 and following) which consist of expenses paid or incurred by the taxpayer, in connection with the performance by him of services as an employee under a reimbursement or other expense allowance arrangement with his employer.

**(B) Expenses for travel away from home.**—The deductions allowed by part VI (sec. 161 and following) which consist of ex-

prevents the losses from constituting "items of tax preference" for the purposes of the minimum tax as it existed in 1978. See 26 U.S.C. §§ 56, 57 (1976).[2] The taxpayer brought this action seeking a redetermination of a deficiency asserted by the Commissioner of Internal Revenue in his federal income taxes for the taxable year 1978 in the amount of $2,521.89. On May 24, 1984, the Tax Court determined that there was no deficiency and entered judgment for the taxpayer. The opinion of the Tax Court is reported at 82 T.C. 793 (1984). Fifteen members of the Tax Court agreed with Judge Drennen's majority opinion, one concurred and two dissented.

We briefly summarize the relevant facts. Since the January 1978 termination of his employment with a private company, the taxpayer has devoted virtually all of his working time to pari-mutuel wagering on dog races. He has no other profession or employment and his only sources of income apart from his gambling winnings are interest, dividends and sales of investments (amounting to $6,498 in 1978). During the 1978 tax year in question Groetzinger went to the track six days a week, normally from 1:00 p.m. to 11:30 p.m., and spent substantial amounts of time preparing to make wagers for his own account. The Tax Court found that he devoted sixty to eighty hours per week to these activities; the taxpayer never placed bets for others or sold tips.

In 1978 Groetzinger bet $72,032, and won back $70,000, resulting in a net loss from gambling of $2,032. On his Federal income tax form, the taxpayer did not deduct the $2,032 loss from gambling in arriving at "adjusted gross income" nor did he claim any itemized deductions, but instead listed that amount as a net loss from gambling on his Supplemental Income Schedule (Schedule E) of his Form 1040. In the notice of deficiency, the Commissioner determined that Groetzinger's $70,000 of gambling winnings constituted income and that his $70,000 of deductible gambling losses constituted itemized deductions,[3]

penses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee.

(C) **Transportation expenses.**—The deductions allowed by part VI (sec. 161 and following) which consist of expenses of transportation paid or incurred by the taxpayer in connection with the performance by him of services as an employee.

(D) **Outside salesmen.**—The deductions allowed by part VI (sec. 161 and following) which are attributable to a trade or business carried on by the taxpayer, if such trade or business consists of the performance of services by the taxpayer as an employee and if such trade or business is to solicit, away from the employer's place of business, business for the employer.

\* \* \* \* \* \*

2. Under the Commissioner's theory the taxpayer's losses would constitute excess itemized deductions. See *infra* p. 271. The provisions imposing the minimum tax provide as follows in pertinent part:

§ 56. **Imposition of tax**
(a) **General rule**
In addition to the other taxes imposed by this chapter, there is hereby imposed for each taxable year, with respect to the income of every person, a tax equal to 15 percent of the amount by which the sum of the items of tax preference exceeds the greater of—

(1) $10,000, or
(2) the regular tax deduction for the taxable year (as determined under subsection (c)).

\* \* \* \* \* \*

§ 57. **Items of tax preference**
(a) **In general**
For purposes of this part, the items of tax preference are—
(1) **Excess itemized deductions**
An amount equal to the excess itemized deductions for the taxable year (as determined under subsection (b)).

\* \* \* \* \* \*

3. 26 U.S.C. § 165 governs the deductibility of losses and specifically allows wagering losses to be deducted only to the extent of wagering winnings. The Section states in pertinent part:

§ 165. **Losses**
(a) **General Rule.**—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\* \* \* \* \* \*

(c) **Limitation on losses of individuals.**—In the case of an individual, the deduction under subsection (a) shall be limited to
(1) losses incurred in a trade or business;
(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and

\* \* \* \* \* \*

thus subjecting the taxpayer to a $2,141.89 minimum tax (App. 9a). See *supra* note 2.

## II

The determination of what constitutes a "trade or business" under the various provisions of the Internal Revenue Code has proven to be most difficult and troublesome over the years. Although the term appears frequently in numerous provisions of the Code[4] it has not been defined by either the Code or the Treasury regulations, nor has any authoritative judicial definition of the terms evolved. B. BITTKER, 1 TAXATION OF INCOME ESTATES AND GIFTS ¶ 20.1.2 (1981). We limit our inquiry to determining whether Groetzinger's activities constituted a trade or business under Sections 62 and 162 of the Code, since the precise meaning or connotation of the term appears to vary depending upon the provision in which it is used. See *Steffens v. Commissioner*, 707 F.2d 478, 482 (11th Cir. 1983); 4A MERTENS LAW OF FEDERAL INCOME TAXATION § 25.08 (1979). Although the specific issue in this case is the application of § 62(1) (*supra* note 1), the Commissioner concedes that the meaning of the term "trade or business" is the same under §§ 62(1) and 162(a)[5] and that the cases considering § 162 are relevant here since both Sections involve the deductibility of expenses incurred in carrying on a trade or business (Br. 10).

The Tax Court in *Gentile v. Commissioner*, 65 T.C. 1, 2 (1975), held, in circumstances similar to this case, that a full-time gambler wagering for his own account was not engaged in a "trade or business" (under 26 U.S.C. §§ 162, 1402(c)), because he "neither provided nor held himself out as a provider of any goods or services to any other person." The Tax Court subsequently reversed itself, again in a case involving nearly identical facts, and rejected the proposition that the offering of goods or services to others was an absolute prerequisite to characterization of activities as a "trade or business" under § 62(1). *Ditunno v. Commissioner*, 80 T.C. 362, 371 (1983); to the same effect see *Meredith v. Commissioner*, 49 T.C.M. 318 (1984). The Eleventh Circuit has adopted the Tax Court's position in *Ditunno* by affirming the Tax Court on the basis of its Memorandum of Findings of Fact and Opinion in *Nipper v. Commissioner*, 47 T.C.M. 136 (1983). *Nipper v. Commissioner*, 746 F.2d 813 (11th Cir.1984) (*per curiam*) (unpublished order). The Tax Court's position has been overruled, however, in two circuits by opinion in appeals from the Tax Court. See *Estate of Cull v. Commissioner*, 746 F.2d 1148 (6th Cir.1984), certiorari denied, —— U.S. ——, 105 S.Ct. 2701, 86 L.Ed.2d 717; *Gajewski v. Commissioner*, 723 F.2d 1062 (2d Cir.1983), certiorari denied, —— U.S. ——, 105 S.Ct. 88, 83 L.Ed.2d 35. The Third Circuit has affirmed a district court case also rejecting *Ditunno*. See *Noto v. United States*, 598 F.Supp. 440 (D.N.J. 1984), affirmed without explanation by unreported judgment order, 770 F.2d 1073 (3d Cir.1985).

## III

In the present case the full Tax Court reconsidered its ruling in *Ditunno* in light of the *Gajewski* decision and reasserted the correctness of its position with only four dissenters. Thus the real issue before us is whether the "goods and services" test should be an absolute prerequisite to a

---

**(d) Wagering losses.**—Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions.

**4.** One count revealed that the term "trade or business" was used more than 170 times in at least sixty different sections of the Internal Revenue Code. See Saunders, *"Trade or Business," Its Meaning Under the Internal Revenue Code*, 1960 So.Cal.Tax Inst. 693. See also *Steffens v. Commissioner*, 707 F.2d 478, 482 (11th Cir. 1983).

**5.** 26 U.S.C. § 162 provides in pertinent part:

**§ 162. Trade or business expenses**

    **(a) In general.**—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * *.

       \*     \*     \*     \*     \*     \*

finding that a taxpayer engaged in a "trade or business" under § 62(1).

Unfortunately neither judicial precedent nor the relevant statutory language of §§ 62(1) and 162(a) provides a clear basis for resolving this issue. The "goods and services" requirement first appeared in a solo concurrence of Justice Frankfurter in *Deputy v. DuPont*, where the Justice stated that the carrying on of a trade or business "involves holding oneself out to others as engaged in the selling of goods or services." 308 U.S. 488, 499, 60 S.Ct. 363, 369, 84 L.Ed. 416. One year later when the Court squarely faced the "trade or business" issue and had an opportunity to employ the test to dispose of the taxpayer's claim, it failed to adopt the Frankfurter definition. *Higgins v. Commissioner*, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783. In *Higgins* the Court rejected the argument that a trade or business "embraces everything about which a person can be employed" and simply ruled that the determination of whether the activities of a taxpayer are "carrying on a business" requires an examination of the facts of each case and that the definition excludes management of one's own securities. 312 U.S. at 217–218, 61 S.Ct. at 477–478. Subsequent Supreme Court cases dealing with the "trade or business" issue also failed to mention the Frankfurter test. See *City Bank Farmers Trust Co. v. Helvering*, 313 U.S. 121, 61 S.Ct. 896, 85 L.Ed. 1227; *United States v. Pyne*, 313 U.S. 127, 61 S.Ct. 893, 85 L.Ed. 1231. Although numerous courts have recanted the Frankfurter language in attempting to summarize considerations relevant to the "trade or business" determination (see cases cited in *Gajewski*, 723 F.2d at 1066), only one case expressly applied the test to hold that a taxpayer was not engaged in a trade or business (apart from the gambling cases beginning with *Gentile* in 1975). The Supreme Court reversed that case, see *Snow v. Commissioner*, 416 U.S. 500, 94 S.Ct. 1876, 40 L.Ed.2d 336, reversing 482 F.2d 1029 (6th Cir.1973), ruling that the "goods and services" test was not relevant to the meaning of "trade or business" as used in 26 U.S.C. § 174 since that sec-

tion was "enacted in 1954 to dilute some of the [more restrictive] conception of ordinary and necessary business expenses under § 162(a) * * * adumbrated by Mr. Justice Frankfurter in a concurring opinion in *Deputy v. DuPont*." We agree with the Tax Court that this reference by the Supreme Court does not constitute an implicit approval of the goods and services test. 82 T.C. at 798 n. 17.

Nor do the 1982 Amendments to the minimum tax provisions, which, *inter alia*, exempt wagering losses from the alternative minimum tax by allowing the deduction of wagering losses from the minimum tax base, provide any guidance. See 26 U.S.C. § 55(e)(1)(A). The exclusion of wagering losses was added in conference without explanation in the legislative history. See the Tax and Fiscal Responsibility Act of 1982, Pub.L. 97–248, Title II, sec. 201(a), 96 Stat. 411, 414; H.R.Rep.No. 760, 97th Cong., 2d Sess. 473–477 (1982), U.S.Code Cong. & Admin.News 1982, pp. 781, 1190. Since the statutory change preceded the *Ditunno* case, it is probably best interpreted as a reaction to the perceived inequalities caused by prior caselaw's refusal to recognize full-time gamblers as conducting a trade or business, see, *e.g.*, *Gentile, supra*, and cannot fairly be read as Congressional approval or disapproval of the reasoning of those cases.

It is important initially to set forth our understanding of the purpose of § 62(1) before moving on to consider the correctness of applying the "goods and services" test to this case. Section 62 of the Internal Revenue Code of 1954 was taken without substantive change from the 1939 Code. H.R.Rep. No. 1337, 83rd Cong., 2d Sess. (1954), 1954 U.S.Code Cong. & Ad.News 4025, 4155. The provision itself does not create any deductions; it merely provides for special treatment of deductions allowed elsewhere in the Code "which are attributable to a trade or business carried on by the taxpayer." See *supra* note 1. It embodies the fundamental distinction which appears throughout the Code between business and non-business items. See *United States v.*

*Generes,* 405 U.S. 93, 103, 92 S.Ct. 827, 833, 31 L.Ed.2d 62 (1972). As a general matter, items associated with the carrying on of a trade or business are deductible while non-business items are not, even though "the latter are just as adverse in financial consequence to the taxpayer as the former." *Id.* Although no specific definition of "trade or business" deductions is supplied in § 62(1), the term must be juxtaposed and interpreted with reference to the mandate of § 262 of the Code that "no deduction shall be allowed for personal, living, or family expenses."

The special treatment allowed by § 62(1) is to permit trade or business deductions to be subtracted directly from gross income to arrive at adjusted gross income, see *supra* note 1,[6] whereas non-business deductions (unless otherwise specified) may only reduce adjusted gross income to the extent they exceed the zero bracket amount (formerly referred to as the "standard deduction," 4A Mertens, *supra,* at § 31A.10). See 26 U.S.C. § 63(c), (f). This special treatment of trade or business deductions is allowed, however, only where the "trade or business does not consist of the performance of services by the taxpayer as an employee." 26 U.S.C. § 62(1). It is this second distinction embodied in § 62 between employees and nonemployees engaged in a trade or business that sheds light on the meaning of "trade or business." The language of Section 62 strongly implies that employees are engaged in a "trade or business" (§ 62(2) is entitled "Trade and business deductions of employees") and courts have uniformly held that employees should receive such trade or business treatment. See *Trent v. Commissioner,* 291 F.2d 669 (2d Cir.1961); *Patterson v. Thomas,* 289 F.2d 108 (5th Cir.1961), certiorari denied, 368 U.S. 837, 82 S.Ct. 35, 7 L.Ed.2d 38; *Noland v. Commissioner,* 269 F.2d 108 (4th Cir.1959), certiorari denied, 361 U.S. 885, 80 S.Ct. 156, 4 L.Ed.2d 121; 4A Mertens, *supra,* at § 25.08.

The most obvious distinction between employees and non-employees earning income is that the latter incur many expenses in earning a living or in their occupation or livelihood that the former do not. The distinction between employees and non-employees engaged in a trade or business indicates that the term "trade or business" refers to the "business of" a person's occupation, livelihood or means of earning a living. It would seem necessary to allow self-employed individuals the full amount of deductions for costs associated with their earning a living in order to obtain an accurate picture of their annual income. Employees, on the other hand, do not normally pay for such occupationally associated costs such as heating, lighting, office equipment, bookkeeping, etc. in the course of earning wages or salaries, and the standard deduction would appear to adjust their income sufficiently for any occupationally related expenses incurred by an employee. Thus Congress appears to have concluded that it is fair to allow the deduction of trade or business expenses by employees only to the extent these deductions exceed the zero bracket amount. This explanation of the differing treatment of employees and non-employees in § 62(1) is supported by the fact that Congress provided for adjustments to this rough framework where employees incur certain substantial expenses associated with their employment. Employees are allowed to deduct, for example, travel, moving and transportation expenses incurred in connection with the performance of services as an employee. 26 U.S.C. § 62(2), (8). Thus the underlying assumption of § 62(1) evidently is that in most cases a taxpayer's income derives from his or her occupation or livelihood and that a fair tax system requires differing treatment of employees and self-employed individuals. Consequently, defining "trade or business" as any person's occupation or livelihood implements Congress' intent with respect to § 62(1).

**6.** Thus one court has described adjusted gross income as "an intermediate figure somewhere between gross income and taxable income which may be defined generally as gross income minus business deductions." *Gardiner v. United States,* 391 F.Supp. 1202, 1207 (C.D.Utah 1975).

This broad definition of the term "trade or business" is precisely the one suggested by Judge Friendly over two decades ago. In *Trent v. Commissioner,* he set forth a general discussion of the meaning of the term "trade or business" and, after quoting Justice Frankfurter's definition in passing, stated: "The courts have properly assumed that the term means all means of gaining a livelihood by work, even those which would scarcely be so characterized in common speech * * *." 291 F.2d 669, 671 (2d Cir.1961). The court then provided citations to four cases holding that a teacher, an actor, a judge and a research worker are engaged in a trade or business. *Id.*

Persuasive support for this interpretation of the "trade or business" term also comes from the fact, noted in *Trent,* 291 F.2d at 671 n. 1, that Congress at one time "thought it necessary to provide specifically that 'professions and *occupations*' come within the phrase 'trade or business.'" See Revenue Act of 1917, § 200, 40 Stat. 302, 303 (emphasis supplied). The Second Circuit in *Gajewski* cites *Trent* as "implicitly adopting [the] 'goods or services' requirement," but *Gajewski* does not consider Judge Friendly's broader formulation nor the above-cited legislative history. 723 F.2d at 1066.

The consequence of our understanding of the focus of § 62(1) is that the term "trade or business" as used in that Section should be construed broadly. The purpose of § 62(1) also would indicate that there is no basis for distinguishing among different types of livelihoods or occupations in determining whether a person is engaged in a trade or business. Accordingly, the term "trade or business" has not been limited to the "carrying on of ordinary industrial or commercial activities," but includes the professions, the arts, athletic activities and the holding of public office. 4A MERTENS, *supra,* at § 25.08. Rather, the inquiry should concentrate on whether certain activities of a taxpayer can fairly be charac-

terized as a livelihood, occupation or means of earning a living. The traditional parameters utilized by courts to determine whether activities constitute a trade or business have concentrated on such an inquiry. The two primary considerations have been 1) the continuity, repetition and extensiveness of activities and 2) the good faith intent of the taxpayer to make a profit or produce income. *Id.* The Supreme Court also has ruled that the term does not encompass purely "personal" activities no matter how "continuous" or "extended" the activity may be nor how profitable, *Higgins v. Commissioner,* 312 U.S. at 216, 218, 61 S.Ct. at 477, 478, and this holding certainly comports with the Code's prohibition of the deduction of "personal, living and family expenses." 26 U.S.C. § 262. All of these considerations address the question of whether an activity can be termed a livelihood or occupation within the ordinary meanings of those terms.[7]

In view of the foregoing understanding of the term "trade or business," this becomes an easy case. The Tax Court found that Groetzinger devoted a continuous and extraordinary amount of time to his gambling efforts, with the intent to earn a living from the activity. 82 T.C. at 794–795. These findings are amply supported by the evidence and show that the taxpayer's gambling activities constituted his occupation or livelihood and therefore a "trade or business" under § 62(1).

Application of this broad definition of trade or business undoubtedly requires courts to make some close calls and fine distinctions. For example, the distinction courts have made between long-term "investors" and short-term "traders" trading solely for their own account in securities is an extremely fine one. Only persons whose activities are directed at short-term trading in securities and whose income is "principally derived from the sale of securities rather than from dividends and interest paid on those securities," *Moller v. Unit-*

---

**7.** This interpretation of the term trade or business does not conflict in any way with the settled rule that a taxpayer may have more than one trade or business. See 4A MERTENS, *supra,* at § 25.08.

ed States, 721 F.2d 810, 813 (Fed.Cir.1983), certiorari denied, —— U.S. ——, 104 S.Ct. 3534, 82 L.Ed.2d 839 (1984), as opposed to long-term holding of investments, are considered "traders" engaged in a trade or business. See *Purvis v. Commissioner*, 530 F.2d 1332, 1334 (9th Cir.1976). *Higgins* rejected the notion that an "investor" ever could be engaged in a trade or business because of what it termed the "personal" nature of investment activities. 312 U.S. at 216, 218, 61 S.Ct. at 477, 478.[8] The exclusion of investors from the definition of trade or business is consistent with a definition of the term that emphasizes whether the taxpayer's activities constitute a livelihood or occupation. The Tax Court has persuasively determined that the basis for the distinction between traders and investors supports Groetzinger's argument that his full-time gambling activities do constitute a trade or business. 82 T.C. at 802.

There are two grounds for distinguishing long-term investment from short-term trading: 1) investment is more fairly characterized as a "personal" activity than is trading and 2) an equitable basis exists for distinguishing high-volume traders from casual traders, while the same distinction cannot be made between high-volume investors and low-volume investors. Passive or long-term investment is an activity engaged in to some degree by virtually every taxpayer. In most cases, it is clear that personal investment to preserve or protect the fruits of one's labor is not the investor's livelihood or occupation, but rather an activity dealing with the surplus wealth arising out of one's occupation. In that sense the activity is "personal" in that so many undertake the activity out of necessity as an adjunct to the task of earning a living. The fact that one person has accumulated more wealth than another, by means of toil or simply good fortune, so that passive investment may command substantially more of the wealthier person's time and attention than that of a poorer counterpart, would not justify allowing the wealthier

taxpayer the benefit of trade or business treatment of the larger-scale investment activity. Similarly a person who has an eating problem or who has a fetish for cleanliness could not be said to be engaged in the trade or business of dining or bathing. Instead it would be more accurate to say that a person living off of passive investment income has no trade or business or occupation within the meaning of § 62(1).

High-volume short-term trading, on the other hand, is not an activity engaged in by most people and it is hardly viewable as an activity that is adjunct or secondary to a person's occupation or livelihood. Also, whereas the nature of long-term investment activity does not change with increased volume, the nature of short-term trading alters substantially with greater volume. In one sense the activity becomes riskier (the trader is likelier to become bankrupt in one day) and in another sense less hazardous in that a large number of speculative transactions can be effectuated to hedge risk. Although it is not possible to distinguish high-volume investors from low-volume investors, high-volume traders are distinguishable from low-volume traders and are engaged in very different activities. Consequently there is an equitable basis for according a high-volume short-term trader different tax treatment than the taxpayer who occasionally engages in a short-term trade. This equitable basis for distinction is lacking in the context of long-term investors.

Although the analogy is not a perfect one, as the Commissioner points out, a full-time gambler is much more like a high-volume short-term trader than a high-volume long-term investor. Gambling is not engaged in by the vast majority of taxpayers as an activity adjunct to their livelihoods or occupations, and it is therefore less easy to view as a personal activity than is long-term investment in securities. Full-time gambling would also appear to be quite

---

**8.** Therefore *Higgins* goes beyond merely pointing out that the trade or business inquiry is

primarily factually oriented. Contrast *Estate of Cull v. Commissioner*, 746 F.2d at 1151.

different from occasional wagering in terms of the risk encountered and the techniques utilized in hedging risk, so that there is a basis for distinguishing the occasional from the full-time gambler. Thus there is a substantial basis for viewing full-time gambling for one's own account as a person's occupation or livelihood, and therefore as a trade or business.

The fact that a trader arguably offers "goods" to the public, see *infra* p. 277, does not appeal to this Court as a valid ground for distinguishing traders from gamblers. There is a difference, as the Commissioner argues, in that a trader does exchange an "economic unit" with another person (a futures contract or a stock option or certificate, Br. 23–24), in his activity while a gambler does not. But this technical distinction adds nothing to the ultimate inquiry of whether a taxpayer's activities amount to an occupation or livelihood. Instead, in view of the broad definition of trade or business endorsed by this Court today, we agree with the Tax Court that both traders and gamblers are engaged in a trade or business since both earn a living by taking repeated calculated risks and without specifically dealing with other individuals. 82 T.C. at 801–802. Consequently, application of the goods and services test here to bar trade or business status for the taxpayer would improperly shift the Court's focus from what should be the primary consideration in this context— whether the taxpayer's activities are the means by which the taxpayer earns a living.

The district court in *Noto v. United States*, which rejected the Tax Court's position in *Ditunno*, was unable to reconcile the "active trader" cases with its own denial of trade or business status to a full-time gambler, 598 F.Supp. at 444 n. 9, noting that it "fail[ed] to see how the purchase of a security is materially different from the purchase of a betting slip." The court

strongly implied that the active trader cases are irreconcilable with the goods and services requirement and simply are incorrectly decided. In contrast, in our view both the "active trader" and recent full-time gambler cases of the Tax Court are correct.

Apart from the misdirected focus of the goods. and services test, there are other reasons for concluding that it would be both unnecessary and unwise to apply Justice Frankfurter's goods and services test as a bar to holding that a taxpayer's activities constitute a trade or business in this case. If the goods and services test added a great deal of clarity or simplicity to the difficult and imprecise inquiry at issue, we would be extremely hesitant to reject the standard.[9] Unfortunately, that test offers no panacea in terms of illuminating the meaning· of "trade or business," nor in terms of resolving this case. To the contrary, as a general proposition the test is flawed in that it is difficult to apply and leads to the wrong result in certain respects. As Professor Bittker points out, the Frankfurter definition strongly, but erroneously, implies that taxpayers working for a single employer are not engaged in a trade or business because they "do not hold themselves out to serve all comers in the manner of a merchant, independent contractor or professional person." 1 BITTKER, *supra*, at ¶ 20.1.2. But it is well settled that an employee's activities constitute a trade or business, even if the services are not offered to the public. See cases cited *supra* p. 273.

Reconciling the goods and services test with the cases treating short-term trading as a trade or business is confusing at best. See discussion of *Noto v. United States*, *supra* p. 276. An active trader or speculator who seeks profit from short-term securities market swings by trading for his or her own account, see *supra* p. 274,

---

**9.** It is important to recognize that requiring "the holding out to others by offering goods and services" would only resolve the trade or business issue in a very limited number of cases. Most often the "holding out" to third persons is not at issue, but instead the determination revolves around difficult factual questions such as the continuity and regularity of activities or the existence of a reasonable expectation of profit. See 4A MERTENS, *supra*, at § 25.08.

would not appear to satisfy the "goods or services" test. Securities simply are not "goods" within the ordinary meaning of the term nor under a legal definition. See Uniform Commercial Code §§ 9–105, 9–109. Nor would such a trader appear to hold himself out to the public in the manner contemplated by Justice Frankfurter. See 1 BITTKER, *supra*, at ¶ 20.1.2.

In view of the improper focus of the "goods and services" test and its dubious value as an analytical tool in this context, we cannot take seriously Judge Tannenwald's admonition in his dissent in *Ditunno* that rejection of the "goods and services" requirement will "wreak havoc on the concept of trade or business." 80 T.C. at 372. Furthermore, when asked at oral argument what parade of horribles or bad consequences would result from affirmance of the Tax Court's position, counsel for the Commissioner could offer none. This is perhaps not surprising in view of the fact that the Commissioner argued in favor of trade or business status for fulltime gamblers before the Tax Court in *Gentile.* 65 T.C. 1 (1975).

There can be no disagreement that the traditional approach to determining whether activities constitute a trade or business is in need of refinement, but to assert that the "facts and circumstances" test "does not describe a standard at all," *Gajewski*, 723 F.2d at 1066, goes too far. The current standard simply reflects the broad meaning Congress intended by the term trade or business. The types of parameters courts have previously utilized to define the scope of the term trade or business have involved degree, regularity and intent but have not distinguished among certain types of livelihoods. This facts and circumstances test is precisely the type of approach that the Supreme Court intended to sanction in *Higgins* whereas the "goods and services" test marks an unnecessary and unwarranted departure from that course. The fact that Groetzinger has chosen to earn a living in a manner somewhat out of the ordinary is not dispositive.

The decision of the Tax Court is AFFIRMED.