**William E. BAXTER, Jr. and Julia W. Baxter, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. R–84–463 BRT.

United States District Court,
D. Nevada.

March 11, 1986.

Virgil H. Wedge, Reno, Nev., and Bryant R. Burton, Los Angeles, Cal., for plaintiffs.

Lamond R. Mills, U.S. Atty., Reno, Nev., and Michael P. Haney, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## ORDER GRANTING
## SUMMARY JUDGMENT

BRUCE R. THOMPSON, District Judge.

Plaintiffs William and Julia Baxter brought this action for a refund of Federal income taxes assessed and collected for calendar years 1978, 1979, 1980 and 1981. This Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 1346(a)(1). The parties now cross move for summary judgment.

The parties do not dispute the underlying facts. Plaintiff William Baxter is a professional gambler. He has been gambling since age 14 and has never had any other occupation. During the years at issue, poker was Baxter's primary gambling activity. Baxter devoted a substantial amount of time to his gambling activities. Baxter was sometimes involved in a game which extended over three consecutive days. The majority of the games in which Baxter played were held in the open on casino floors and required a $10,000 cash stake to enter the game. Baxter is an extremely skillful poker player. He won the World Series of Poker Championship in 1975, 1978, and 1982. He won the Super Bowl of Poker Championship in 1981 and 1982.

Baxter's poker skills are also demonstrated by the substantial income he earned through his gambling activities. Baxter's reported income for the four years at issue exceeded $1.2 million. The money which Mr. Baxter employed in his gaming activities was his own; he had no partners or sponsors. He did not receive any compensation for appearances, interviews or other engagements with respect to his status as a professional gambler.

## I.

■ The threshold issue facing this Court is whether Baxter's gaming activities constitute a trade or business within the intendment of the Internal Revenue Code. If his gaming activities do not constitute a trade or business, then the Commissioner

properly denied Baxter's claims for refunds. If his gaming activities constitute a trade or business, then Baxter has met an initial prerequisite to the application of the maximum tax on personal service under I.R.C. § 1348 to Mr. Baxter's net Schedule C gaming income.

The determination of what constitutes a "trade or business" under the various provisions of the Internal Revenue Code has proven to be most difficult and troublesome over the years. Although the term appears frequently in numerous provisions of the Code it has not been defined by either the Code or the Treasury regulations nor has any authoritative judicial definition of the terms evolved.

*Groetzinger v. Commissioner,* 771 F.2d 269, 271 (7th Cir.1985) (footnote omitted).

Despite the difficulty in determining whether a taxpayer is engaged in a trade or business, courts have developed two tests. They are the "goods and services" test and the "facts and circumstances" test. The "goods and services" test originated in *Deputy v. du Pont,* 308 U.S. 488, 499, 60 S.Ct. 363, 369, 84 L.Ed. 416 (1940). In *Deputy,* Justice Frankfurter stated in a solo concurring opinion that the carrying on of a trade or business "involves holding oneself out to others as engaged in the selling of goods or services." *Id.* The "facts and circumstances" test originated in *Higgins v. Commissioners,* 312 U.S. 212, 217, 61 S.Ct. 475, 477, 85 L.Ed. 783 (1941). The *Higgins* court stated that "[t]o determine whether the activities of a taxpayer are 'carrying on a business' requires an examination of the facts in each case." *Id.* At oral argument on these motions, the Government argued that the so-called "goods and services" test is merely one facet of the *Higgins'* "facts and circumstances" test. Essentially, the Government contends that the "goods and services" test is an absolute prerequisite to a finding that Baxter engaged in a "trade or business." The Court rejects this contention for a variety of reasons.

First, the Government fails to cite any binding authority for such a contention. Initially, the Court notes that Justice Frankfurter's concurrence in *Deputy* carries little precedential value. The majority opinion in *Deputy* did not even address whether the taxpayer was in a trade or business. *Deputy,* 308 U.S. at 489, 60 S.Ct. at 364. In addition, when the Supreme Court decided *Higgins,* several different and conflicting interpretations of the words "carrying on a trade or business" existed. *See Dittuno v. Commissioner,* 80 T.C. 362, 367–68 (1983).

The *Higgins* court initially noted that a 1911 Supreme Court definition of business articulated in *Flint v. Stone Tracy Company,* 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389 was not controlling because that case answered a different inquiry under a different statute. *Higgins,* 312 U.S. at 217, 61 S.Ct. at 477. The *Higgins* court then ignored Justice Frankfurter's goods and services test and stated that a determination whether a taxpayer's activities constitute a trade or business requires an examination of the facts. *Id.*

Subsequent Supreme Court cases faced with the "trade or business" issue reiterated the *Higgins* test and failed to mention the goods and services test. *See City Bank Farmers Trust Co. v. Commissioner,* 313 U.S. 121, 61 S.Ct. 896, 85 L.Ed. 1227 (1941); *United States v. Pyne,* 313 U.S. 127, 61 S.Ct. 893, 85 L.Ed. 1231 (1941). In fact, in 1963, when the Supreme Court again addressed this issue, the court followed *Higgins* and held that investing for long-term gain does not qualify for trade or business status. *Whipple v. Commissioner,* 373 U.S. 193, 83 S.Ct. 1168, 10 L.Ed.2d 288 (1963). Although the court cited *Deputy* approvingly, it did not mention the goods and services requirement.

The Government erroneously argues that the Supreme Court implicitly approved the goods and services test in *Snow v. Commissioner,* 416 U.S. 500, 94 S.Ct. 1876, 40 L.Ed.2d 336 (1974). The *Snow* court stated:

Section 174 was enacted in 1954 to dilute some of the conception of "ordinary and necessary" business expenses under § 162(a) (then § 23(a)(1) of the Internal Revenue Code of 1939) adumbrated by Mr. Justice Frankfurter in a concurring opinion in *Deputy v. du Pont*, 308 U.S. 488, 499 [60 S.Ct. 363, 369, 84 L.Ed. 416] (1940), where he said that the section in question (old § 23(a)) "involves holding one's self out to others as engaged in the selling of goods or services." The words "trade or business" appear, however, in about 60 different sections of the 1954 Act. Those other sections are not helpful here because Congress wrote into § 174(a)(1) "in connection with", and § 162(a) is more narrowly written than is § 174, allowing "a deduction" of "ordinary and necessary expenses paid or incurred ... in carrying on any trade or business." That and other sections are not helpful here.

*Id.* at 502–03, 94 S.Ct. at 1877–78 (footnote omitted).

As the Tax Court in *Groetzinger v. Commissioner* correctly noted,

we do not think that a fair reading of that opinion [*Snow*] suggests that the Court intended by its reference to Justice Frankfurter's remarks to do more than compare the relatively liberal allowance provisions of sec. 174 (allowing current deductions for certain research or experimental expenditures *"in connection with"* a trade or business) with the generally more restrictive requirements of sec. 162 (expenses allowed only *"in carrying on"* a trade or business).

*Groetzinger v. Commissioner*, 82 T.C. 793, 798 n. 17; *see also Groetzinger v. Commissioner*, 771 F.2d at 272; *Ditunno*, 80 T.C. at 370. Thus, no Supreme Court decision has adopted Justice Frankfurter's goods and services test.

The Government also points out that the Ninth Circuit once relied upon Justice Frankfurter's concurrence in *Deputy* and applied the goods and services test. *See Daily Journal Co. v. Commissioner*, 135 F.2d 687, 688 (9th Cir.1943). This 1943 decision, however, no longer appears to be controlling precedent. In subsequent cases dealing with the trade or business issue, the Ninth Circuit failed to apply the goods and services test or to refer to either *Deputy* or *Daily*. *See Purvis v. Commissioner*, 530 F.2d 1332 (9th Cir.1976); *Wineberg v. Commissioner*, 326 F.2d 157 (9th Cir.1964); *United States v. Keeler*, 308 F.2d 424 (9th Cir.1962). Accordingly, this Court is not persuaded that either Supreme Court or Ninth Circuit precedent hold that the goods and services test is an absolute prerequisite to a finding that a taxpayer is engaged in a trade or business.

Second, the Ninth Circuit implicitly rejected the Government's contention that the "goods and services" test is an absolute prerequisite to a finding that a taxpayer engaged in a trade or business. *See Purvis*, 530 F.2d 1332. In *Purvis*, a taxpayer appealed a Tax Court decision that his securities-transaction activities were insufficient to constitute his engagement in a trade or business. The *Purvis* court followed *Higgins* and stated that taxpayers whose securities-related activities benefit from short-term savings in the market are traders and, therefore, qualify for trade or business status. Investors who seek long-term profits, however, do not qualify for such status. In determining whether a taxpayer should be considered a trader or an investor, the *Purvis* court approved the Tax Court's test formulated in *Liang v. Commissioner*, 23 T.C. 1040, 1043 (1955). This test examines the frequency, extent, and regularity of the taxpayer's securities transactions as well as his intent to derive profit from relatively short-term turnovers.

By admitting that a securities trader could be engaged in a trade or business if his activities were sufficiently frequent, extensive, and regular, the *Purvis* court implicitly rejected the goods and services test because a securities trader does not truly hold himself out to others as engaged in selling goods or services. "Securities simply are not 'goods' within the ordinary meaning of the term nor under a legal definition. *See* Uniform Commercial Code

§§ 9–105, 9–109. Nor would such a trader appear to hold himself out to the public in the manner contemplated by Frankfurter." *See Groetzinger,* 771 F.2d at 277; *see also Noto v. United States,* 598 F.Supp. 440, 444 n. 9; *but see Gajewski v. Commissioner,* 723 F.2d 1062, 1067 n. 8 (2nd Cir.1983).

In addition, the distinction between traders and investors which the *Purvis* court adopted conflicts with the Government's argument that Baxter's full-time gaming activities do not constitute a trade or business. The Seventh Circuit and the Tax Court persuasively reasoned that although the analogy is not a perfect one, a full-time gambler is much more like a high-volume short-term trader than a high volume long-term investor. *See Groetzinger,* 771 F.2d at 275–76; *Groetzinger,* 82 T.C. at 800–03. Investment is more fairly characterized as a "personal" activity then is trading. Investment is an activity engaged in to some degree by virtually every taxpayer. It is not the investor's livelihood or occupation but is an adjunct to the task of earning a living. High-volume short-term trading, on the other hand, is not an activity engaged in by most people and it is hardly viewable as an activity that is adjunct or secondary to a person's occupation or livelihood. Like "trading," full-time gambling is not an activity engaged in by most taxpayers. Nor is it adjunct to the task of earning a living. "Thus, there is a substantial basis for viewing full-time gambling for one's own account as a person's occupation or livelihood, and therefore as a trade or business." *See Groetzinger,* 771 F.2d at 276. This court also agrees with the Seventh Circuit that the "goods and services" test is improperly focused and possesses dubious value as an analytical tool in this context. *See Groetzinger,* 771 F.2d at 277.

The Government relies heavily upon the Second Circuit's *Gajewski* decision and the Sixth Circuit's *Cull* decision. *See Gajewski v. Commissioner,* 723 F.2d 1062 (2nd Cir.1983), cert. denied, 105 S.Ct. 88; *Estate of Cull v. Commissioner,* 746 F.2d 1148 (6th Cir.1984), cert. denied, —— U.S. ——, 105 S.Ct. 2701, 86 L.Ed.2d 717. The Court does not find the reasoning in these decisions to be persuasive. First, both decisions cite *Snow* as an implicit Supreme Court approval of the goods and services test. As discussed previously, this Court declines to adopt such an interpretation of *Snow.* Additionally, as Baxter points out in his reply brief, the precedential value of a number of decisions upon which the *Gajewski* and *Cull* courts relied is questionable. Finally, the *Gajewski* court may well be correct that the *Higgins* court did not "describe a standard at all." *See Gajewski,* 723 F.2d at 1066. The *Purvis* test which examines *the frequency, extent, and regularity of a taxpayer's financial activities as well as the taxpayer's intent to earn a profit, however, clearly states a standard that is well suited to determine whether a taxpayer's activities constitute a trade or business.* Accordingly, the court rejects the Government's contention that the "goods and services" test is an absolute prerequisite to a finding that Baxter engaged in a trade or business.

The Government apparently concedes that Baxter's gaming activities constitute a trade or business under the facts and circumstances test as articulated in *Purvis.* In any event, the Court finds that the frequency, extent, and regularity of Baxter's gaming activities as well as his intent to derive a profit were sufficient to constitute a trade or business under the relevant sections of the Code.

## II.

The Government next contends that Baxter's gaming income does not constitute "personal service income" as defined by I.R.C. § 1348(b) and concludes, therefore, that Baxter may not utilize the fifty-percent maximum tax rate on his gaming income. In relevant part, Section 1348(b) defined "personal service income" as any income which is earned income within the meaning of Section 911(b). Section 911(b) provided that earned income means wages, salaries, or professional fees and other amounts received as compensation for personal services actually rendered.

Apparently, no reported decision has considered whether gaming income may constitute § 911(b) earned income. The Ninth Circuit, however, has examined the meaning of § 911(b) in detail. *See Robida v. Commissioner*, 460 F.2d 1172 (9th Cir. 1972). The *Robida* court stated:

> The distinction Congress created is between income which is earned and income which is not earned. Congress made it clear when it devised the definition for earned income that it meant to include all income not representing return on capital. *See* H.R.Rept. 179, 68th Cong., 1st Sess., 1924, reproduced in Internal Revenue Cum.Bull., 1939–1, part 2, pp. 245–46. Income which accrued to the individual from application of his personal skills, whether received in the form of wages, salaries, professional fees or otherwise, was intended to be "earned" income. Income which accrued to the individual as return on capital was not considered "earned." The tax court labeled the two as *active income* ("income derived from the use of the taxpayer's personal expenditure of time, energy and skill") and *passive income* ("income derived from the use of his property").
>
> Gambling receipts have been considered in the latter category, more clearly akin to return on capital (i.e., money invested in an unusually risky venture) than earned compensation for services performed.

*Id.* at 1174 (footnote omitted). Thus, if Baxter derived his gaming income actively from his expenditure of time, energy, and skill rather than passively from his use of his property, then his gaming income constitutes "earned income" under § 911(b).

Clearly, Baxter's $1.2 million gaming income for the years at issue was not derived from his passive investment of capital in a series of risky ventures. Baxter expended substantial time and energy playing poker. Baxter consistently won at poker because he possesses extraordinary poker skills. Any argument that Baxter's gaming income is not based upon his personal expenditure of time, energy, and skill is meritless. Thus, because Baxter's gaming in-

come constitutes earned income under § 911(b), it also constitutes personal service income under § 1348.

■ The Government points out that Treasury Regulation § 1.348–3(a)(1)(i)(A) specifically excludes gambling gains from the definition of "earned income" within the meaning of § 911(b). This regulation would have the force of law if reasonable and if it were consistent with statutory authorization. *See Dillion Ranch Supply v. United States*, 652 F.2d 873, 880 (9th Cir.1981). The regulation, however, improperly excludes all forms of gambling income from the definition of "earned income." The regulation should have distinguished between gambling income which is derived from the taxpayer's active expenditure of time, energy, and skill—such as poker—and gambling income which is derived from the taxpayer's passive investment of capital where skill is not required—such as keno or slots. Because the regulation fails to distinguish between active and passive gambling income, it is inconsistent with § 1348. Thus, the Court finds to the extent that the regulation prohibits Baxter's gaming income from qualifying as personal service income under § 1348, the regulation is unreasonable and inconsistent with the intent of Congress and is, therefore, not entitled to enforcement.

### III.

■ Finally, the Court must determine to what extent, if any, capital was an income-producing factor in Baxter's gaming income. In 1978, § 1348 adopted the "earned-income" definition contained in § 911(b). Section 911(b) provided that where both personal services and capital are material-income-producing factors in the taxpayer's business, "a reasonable allowance as compensation for the personal services rendered by the taxpayer in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income." 26 U.S.C. § 911(b). Section 1348 was amended, effective for years after 1978, to provide that § 911(b) should be applied without regard to the phrase "not in excess of 30 percent

of his share of the net profits of such trade or business." P.L. 95–600 sec. 441 *reprinted in* 1978 U.S.Code Cong. & Ad.News (92 Stat.) 2878.

Thus, if capital should be considered to be a material-income-producing factor in Baxter's 1978 gaming income, then the amount qualifying for § 1348 treatment would be limited to 30% of his net profits. *See Stanley Gullion v. Commissioner,* 43 T.C.M. (CCH) 694. Additionally, if capital should be considered to be an income-producing factor in Baxter's gaming income for the years 1979, 1980 and 1981, then the amount qualifying for § 1348 treatment would be limited to the amount of income that constitutes a reasonable compensation for the personal services actually rendered. *See* House Conference Rep. No. 95–1800, 95 Cong., *reprinted in* 1978 U.S.Code Cong. & Ad.News 7198, 7265.

The IRS promulgated a regulation which provides guidance in determining whether capital is a material income producing factor. Section 1. 134–3(a)(3)(ii), Income Tax Regs., states:

> Whether capital is a material income-producing factor must be determined by reference to all the facts of each case. Capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business, as reflected, for example, by a substantial investment in inventories, plant, machinery, or other equipment. In general, capital is not a material income-producing factor where gross income of the business consists principally of fees, commissions, or other compensation for personal services performed by an individual. Thus, the practice of his profession by a doctor, dentist, lawyer, architect, or accountant will not, as such, be treated as a trade or business in which capital is a material income-producing factor even though the practitioner may have a substantial capital investment in professional equipment or in the physical plant constituting the office from which he conducts his practice since his capital investment is regarded as only incidental to his professional practice.

In *Smith v. Commissioner,* the Tax Court examined whether capital was a material income producing factor with respect to a painting partnership's income. *See* Sam L. Smith ¶ 83,093 P.H Memo TC (1983). The *Smith* court stated "[w]hether the use of capital is a material income-producing factor is not necessarily to be determined by the amount or the cost of capital assets which are used in the business; rather it is the contribution of such capital in earning income which is the true test." *Id.* at 311. The *Smith* court then quoted from the decision in *Edward P. Allison Company v. Commissioner,* 63 F.2d 553, 558 (8th Cir.1933):

> The way in which capital makes its contribution is important. If utilized in the form of salaries, wages, office rent, etc., it does not make it a material income-producing factor, even though such expenditures are usually essential to the production of income * * *. When the use of capital goes further and gives character to a sizable portion of the operations of the corporation, the percentage of gross income directly attributable to capital sources required to render capital a material income-producing factor need not be very great.

*Id.*

The *Smith* court concluded that

> if capital is simply employed as an adjunct to earning income which is fundamentally from the performance of personal services, making no separate significant contribution to gross income, it will not be considered material, even though the amount of capital employed may be considerable.... In this context, capital employed in the use of auxiliary equipment, which is not income-producing in its own right, may be considered in the nature of "tools of the trade," where the income-producing activity is fundamentally one of providing skilled, specialized and essentially personal services, as in the case of the professional.

*Id.* (citations omitted).

After applying the principles articulated above, the Court finds that capital was not

a material-income-producing factor in Baxter's gaming income. In fact, the Court finds that Baxter's income was derived entirely from his personal services and that the capital he used to finance his poker playing was merely a "tool of the trade." The money, once bet, would have produced no income without the application of Baxter's skills. As discussed previously, it was Baxter's extraordinary poker skills which generated his substantial gaming income, not the intrinsic value of the money he bet.

In consideration of the premises,

IT HEREBY IS ORDERED:

1. Plaintiffs' motion for summary judgment is hereby granted.

2. Within thirty (30) days plaintiffs and defendant shall present for the Court's consideration a form of summary judgment correctly calculating the refunds with interest due to plaintiffs by virtue of this decision.