STEPHEN A. PAOLI AND BETTY MAE PAOLI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Paoli v. Commissioner
Docket No. 42511-85.
United States Tax Court
T.C. Memo 1988-23; 1988 Tax Ct. Memo LEXIS 21; 54 T.C.M. (CCH) 1574; T.C.M. (RIA) 88023; January 21, 1988. William J. Gerard, for the petitioners. Teri A. Frank, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $ 30,297 in petitioners' Federal income taxes for 1981 and additions to tax of $ 1,515 under section 6653(a)(1) [1] and 50 percent of the *22 interest due on $ 30,297 under section 6653(a)(2). The deficiency resulted from respondent's determination that interest on petitioners' margin accounts at various brokerage firms was subject to section 163(d). The issue for decision is whether interest on petitioner's margin accounts was incurred to carry on ordinary trading activities as part of a trade or business. FINDINGS OF FACT Some of the facts have been stipulated, and the facts set forth in the stipulation are incorporated in our findings by this reference. Petitioners were residents of Rockford, Illinois, at the time they filed their petition. They filed a joint Federal income tax return, Form 1040, for 1981. Stephen A. Paoli (petitioner) was a successful inventor, having invented the "zip-off shrimp cleaner" and an automatic deboning machine for separation of meat and bone from poultry, beef, pork, veal, shrimp, and lobster. The deboning machine was marketed commencing in 1964 and continuing to the time of trial. During 1981, petitioner earned a management fee of *23 $ 100,000 from the corporation that manufactured his inventions. Petitioners' adjusted gross income for 1981 also included $ 1,000 in interest and $ 3,990 in dividends reported on Schedule B to their joint return. On Schedule C to their joint return for 1981, petitioners claimed a net loss of $ 262,096 from a business described as "investment trader." Petitioners' Schedule C reported dividends of $ 65,256; home office depreciation of $ 453; dues and publications expense of $ 755; taxes of $ 168; and "interest on business indebtedness" of $ 325,976. The interest claimed consisted of interest on margin accounts with various brokerage firms, which were also the payers of the dividends, as follows: Company
Dividends
Interest
E. F. Hutton & Co.
$ 33,255
$ 194,405
Ernst & Co.
22,244
99,552
Bache
1,573
2,989
Bear, Stearns & Co.
2,062
3,497
Dean Witter Reynolds, Inc.
3,128
10,796
Securities Settlement Corp.
2,994
14,737
Total
$ 65,256
$ 325,976
Interest on a margin account is computed on the basis of the average margin *24 balance on the account at a given point in time. Petitioner's stock holdings in his three E. F. Hutton accounts consisted entirely of Republic Corporation (Republic) stock. As of January 1, 1981, petitioner held 62,000 shares of Republic in his E. F. Hutton accounts. All of this Republic stock was acquired on various dates from 1976 through 1978. No stock was purchased through petitioner's E. F. Hutton accounts in 1981. In September and October of 1981 petitioner sold 22,500 of the Republic shares for a long term capital gain of $ 281,367. Petitioner's stock holdings in his Ernst & Co. account consisted of shares in several different corporations, including Republic. As of January 1, 1981 petitioner held 14,200 shares of Republic in his Ernst & Co. account; this account contained 26,120 shares of Republic at the end of that year. Petitioner's stock holdings in his Bear, Stearns & Co. account and Bache account also consisted of shares in a number of different corporations. The market value of petitioner's holdings in these accounts increased substantially over the course of the year in issue. As of January 1, 1981, holdings in petitioner's Dean Witter account included *25 2,340 shares of Republic stock. Over the course of the year, petitioner purchased and sold Republic shares such that his position in this stock at the year's end was 9,167 shares. The three sales transactions involving Republic stock generated long term capital gain or loss. Dividends totalling $ 2,428.05 were credited to the Dean Witter account with respect to the Republic stock in that account. Other transactions on petitioner's Dean Witter account had no significant effect on petitioner's average margin balance. Several transactions involved cash deposits or withdrawals into a money market fund. The only other transactions on the account involved two "day trades" of stock issued by a company other than Republic. The difference between petitioner's average margin balance on his Dean Witter account before and after the day trades was $ 460. The transactions in petitioner's various broker accounts in 1981 may be summarized as follows: No. of Transactions
Value as of
Broker
Account No.
during 1981
12/31/81
Dean Witter Reynolds, Inc.
013248
83
$ 210,841.00
LaSalle St. Securities, Inc.
446-01084
64
203,503.00
Ernst & Co.
040-02039
353
610,567.50
E. F. Hutton & Co., Inc.
F4501728
5
375,360.00
E. F. Hutton & Co., Inc.
F4502294
15
314,640.00
E. F. Hutton & Co., Inc.
F4502346
5
177,100.00
Bache, Halsey, Stuart,
Shields, Inc.
1500368
37
Bear, Stearns & Co.
459-49803
57
John Muir & Co.
037-49803
9
Richardson Securities, Inc.
002-44000
0
First Western Securities, Inc.
3-13725
1
*26 On Schedule D of their joint return petitioners reported long-term gains of $ 322,051 and short-term losses of $ 170,294. Of the long-term gains, $ 281,367 resulted from petitioner's sales of Republic stock held in his E. F. Hutton accounts. Petitioners' tax return for 1981 reported a total of 171 sales totaling $ 8,322,874 of stock purchased in 133 separate transactions in 1981 totaling $ 7,590,614. Only six of the transactions resulting in short-term capital gain or loss reported for 1981 occurred prior to September 1, 1981. Fifty-four of the reported sales were day trades. In the statutory notice of deficiency, respondent determined that petitioners' dividend income and interest expense should be reported on Schedules B and A, respectively, and that the interest on petitioners' margin account and other investment expenses were not deductible to the extent that they exceeded dividend income. The total interest disallowed was $ 245,084. OPINION Section 163(a) generally allows "as a deduction all interest paid or accrued within the taxable year on indebtedness." Section 163(d), *27 however, limits as to the years at issue a deduction for interest incurred on investment indebtedness: (1) In general.--In the case of a taxpayer other than a corporation, the amount of investment interest * * * otherwise allowable as a deduction * * * shall be limited, in the following order, to -- (A) $ 10,000 * * *, plus (B) the amount of the net investment income * * *.
Section 163(d)(3)(D) defined "investment interest" as "interest paid or accrued on indebtedness incurred or continued to purchase or carry property held for investment." "Property held for investment" is not defined in section 163(d) or the regulations thereunder. In Miller v. Commissioner,70 T.C. 448, 455 (1978), we concluded that property is held for investment when "substantial investment intent" motivates the acquisition or retention of the property. See also W. W. Windle Co. v. Commissioner,65 T.C. 694 (1976). Although the issue in Miller arose under section 57, we noted that both sections 57 and 163(d) attempt to deal with the perceived abuse arising from the deductibility *28 of interest paid on loans obtained to finance investments that will ultimately produce capital gains. Miller v. Commissioner,70 T.C. at 454-455. See also H. Rept. No. 91-413 (1969), 1969-3 C.B. 200, 245. We recently reexamined section 163(d) in King v. Commissioner,89 T.C. 445 (1987). In King, the parties agreed that the taxpayer was in the trade or business of commodities futures trading. In 1978, the taxpayer took delivery of a physical commodity that he later disposed of at a long-term capital gain. During the years in issue, the taxpayer deducted interest expenses resulting from carrying the physical commodity. The issue for decision was whether the taxpayer's deductions were subject to the limitations of section 163(d). In King, the Commissioner argued that the taxpayer's carrying of the commodity was subject to the limitations of section 163(d) regardless of whether the property was held in connection with the taxpayer's trade or business. We disagreed, observing that case law distinguishes traders from investors. We noted that *29 "To the extent a trader is holding assets as part of his trading activities, he is not an investor and therefore does not hold property for investment." (89 T.C. at 461.) We explained the pertinent terminology as follows: The distinction between a "trader" and an "investor" also turns on the nature of the activity in which the taxpayer is involved. A trader seeks profit from short-term market swings and receives income principally from selling on an exchange rather than from dividends, interest, or long-term appreciation. Groetzinger v. Commissioner,771 F.2d 269, 274-275 (7th Cir. 1985), affd. 480 U.S.    , 107 S.Ct. 980 (1987); Moller v. United States,721 F.2d 810, 813 (Fed. Cir. 1983). Further, a trader will be deemed to be engaged in a trade or business if his trading is frequent and substantial. Groetzinger v. Commissioner, supra at 275; Fuld v. Commissioner,139 F.2d 465 (2d Cir. 1943), affg. 44 B.T.A. 1268 (1941). An investor, on the other hand, makes purchases for capital appreciation and income, usually without regard to short-term developments that *30 would influence prices on the daily market. Groetzinger v. Commissioner,82 T.C. 793, 801 (1984); affd. 771 F.2d 269 (7th Cir. 1985), affd. 480 U.S.    , 107 S.Ct. 980 (1987); Liang v. Commissioner,23 T.C. 1040, 1043 (1955). No matter how extensive his activities might be, an investor is never considered to be engaged in a trade or business with respect to his investment activities. Higgins v. Commissioner,312 U.S. 212, 2166, 218 (1941); Groetzinger v. Commissioner,771 F.2d at 275. [89 T.C. at 458-459.]
Because we found that the interest expense at issue in King was incurred in connection with the taxpayer's trade or business of trading, we held that the taxpayer's deductions were not subject to the limitations of section 163(d). In support of his claim that he was a trader during 1981, petitioner and two of his stockbrokers testified that he spent a substantial amount of time in relation to the activity, including frequent telephone calls to the brokers. Petitioner also testified that he had a "Quotron" ticker in his home that made available *31 to him immediate information concerning all trades on the New York and American Stock Exchanges and that he subscribed to publications providing information "to make the necessary trading decisions." Petitioner attempts to bring himself within the holding of King by arguing that he was a trader rather than an investor. Petitioner's reliance on King is misplaced. In King, the parties agreed that the taxpayer was in the trade or business of commodities futures trading. Our decision in that case did not, however, turn solely on the taxpayer's status as a trader of commodities futures. In King, the taxpayer established that the interest expense at issue was connected with his trading activities. Although petitioner has adduced evidence that might lead us to conclude that he evolved from an investor into a trader in the last quarter of 1981, petitioner has failed to prove that the specific items of interest expense at issue in this case were an integral part of his trading activities. The evidence indicates that most, if not all, of petitioner's reported interest expense was incurred carrying property held for investment. Respondent disputes the credibility *32 of the testimony of petitioner and his brokers and discounts it as "self-serving." We are not impressed with respondent's characterization of petitioner's testimony and that of his witnesses. It is not incredible, impeached, or contradicted. Even taking it at face value, however, we are not persuaded that it is inconsistent with characterization of petitioner as an investor as contrasted to a trader, as that distinction is explained in King v. Commissioner, supra.In this case, we conclude that the most persuasive evidence of the nature of petitioner's activities is an objective analysis of the transactions in which he engaged in 1981. [2]
Petitioner maintained substantial holdings in stock *33 of Republic from 1976 through 1981. That stock represented by far the largest portion of (1) petitioners' transactions during 1981, (2) the value of their holdings as of end of 1981, and (3) dividend income reported in 1981. Most of the Republic stock was held in petitioners' three E. F. Hutton accounts, on which they paid interest of approximately $ 194,000 during 1981. They realized capital gains of approximately $ 281,000 from sales of Republic stock from these three accounts, which stock had been held for at least 3 years prior to sale. The most reasonable inference from the record is that the interest incurred on the E. F. Hutton accounts related to stock held for capital appreciation and dividends, e.g., for investment. Similarly, activity in the Dean Witter account consisted primarily of transactions in Republic stock that generated long-term capital gain or loss. The only other transactions in the Dean Witter account were deposits into and withdrawals from a money market account and two day trades in November. The difference between petitioners' average margin balance immediately before and after these transactions, $ 460, is insignificant in relation to the total. *34 Again we conclude that the interest incurred on the Dean Witter accounts was incurred to maintain stock held for capital appreciation and dividends. The E. F. Hutton and Dean Witter accounts reflected interest incurred over the course of the year even though substantially all of the trades occurred in September and October. In other accounts, by contrast, the activity and the interest expense were concentrated during the last months of the year, during which a great deal of short-term trading occurred. As respondent acknowledges, the pattern of activity on petitioner's other accounts is different from that on the E. F. Hutton and Dean Witter accounts. While the value of petitioners' holdings in the Dean Witter account more than tripled in 1981, the balance in the Ernst & Co. accounts decreased from $ 648,188 to $ 610,567. While petitioners' broker from Dean Witter described only transactions in November 1981 that could be characterized as short swings, his broker from Ernst & Co. corroborated numerous trades reflected in the account for the year and confirmed petitioner's disavowals of investment intent. Petitioner has nevertheless failed to present evidence establishing a *35 link between the specific items of interest expense incurred on the Ernst & Co. account and his trading, as opposed to investment, activities. The evidence with respect to the remaining accounts is also inconclusive, and petitioners have failed to satisfy their burden of proof with respect to those accounts. The accounts reflect fewer transactions, over a shorter period of time, and an increase in the value of the holdings during the year. Many of the transactions on these accounts were in Republic stock. The interest expense was incurred primarily over periods when there were no transactions in the accounts, suggesting that the interest was incurred in carrying securities held for investment. On the other hand, the accounts do reflect multiple transactions in September and October, and the number of the transactions in the miscellaneous accounts was high in relation to the amount of gain, the amount of dividends, and the amount of interest earned. None of the characteristics, however, are inconsistent with activities by an investor in stock, as contrasted to a trader. Without more information concerning the nature of the transactions reflected in the miscellaneous accounts, *36 we cannot conclude that the stocks held in those accounts were not held for investment or that the interest occurred in those accounts is not subject to the limitations of section 163(d). Upon cross-examination by respondent's counsel, petitioner testified that he had been audited for years prior to 1981 and that investment interest had been disallowed for those years. Petitioner did not explain his reporting of the interest expense on Schedule C for 1981 in terms of reliance on any advice he received from an auditing agent, from the preparer of his return, or from any other professional. On balance, we conclude that petitioners have not satisfied their burden of proving that respondent's determination of the addition to tax is erroneous. See Rule 142(a), Tax Court Rules of Practice and Procedure; Neely v. Commissioner,85 T.C. 934, 947-950 (1985). Decision will be entered for the respondents.
Footnotes
1. Except as otherwise noted, all sections references are to the Internal Revenue Code as amended and in effect during the year in issue. ↩
2. Petitioners' reply brief totally ignores the analysis of the specific accounts in respondent's opening brief and does not object to any of the findings of fact proposed by respondent. Petitioner's reply brief was limited to discussion of King v. Commissioner,89 T.C. 445↩ (1987), and quotation of petitioner's testimony that it was his intent to be a trader during 1981. We conclude that respondent's analysis of the individual accounts is undisputed.